IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMM GRANDVIEW, LLC, a Nebraska Limited Liability Company;<br><br>Plaintiff,<br><br>vs.<br><br>AMGUARD INSURANCE COMPANY, a Pennsylvania Company; and BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES, a Pennsylvania Company;<br><br>Defendants. | **8:20CV197**<br><br>**MEMORANDUM AND ORDER** |

Pending before the court is the motion to compel written discovery responses filed by Plaintiff Timm Grandview, LLC ("Plaintiff"), (Filing No. 39). Being fully advised, Plaintiff's motion will be granted in part and denied part as outlined below.

BACKGROUND

On August 19, 2017, a significant hailstorm passed through Kearney, Nebraska, causing damage to two apartment buildings owned by Plaintiff. (Filing No. 11 at CM/ECF p. 8, ¶ 14). One complex is located at 1319 East 45th Street, while the other is located at 4010 Avenue R ("the Subject Properties"). When Plaintiff discovered the damage, it notified Defendant AmGUARD Insurance Company ("AmGUARD"), who, at all relevant times, provided property insurance to Plaintiff for the Subject Properties. (Filing No. 1-1 at CM/ECF p. 7-8, ¶¶ 11, 15).

AmGUARD then opened claims and began an investigation into the nature and extent of the purported hail damage. After conducting its investigation, AmGUARD issued payment for covered damages to both Subject Properties. However, Plaintiff contends that AmGUARD inappropriately prolonged its investigation for more than a year, and then "grossly underpaid" Plaintiff for those covered damages. (Filing No. 40 at CM/ECF p. 2).   On December 16, 2019, Plaintiff filed the instant action against AmGUARD and co-Defendant Berkshire Hathaway Guard Insurance Companies ("Berkshire Hathaway"). The operative pleading alleges claims for both breach of contract and for a breach of the covenant of good faith and fair dealing, (Filing No. 1-1 at CM/ECF pp. 12-14).   The case was removed to federal court on May 26, 2020. (Filing No. 1).

This court entered progression deadlines, (Filing No. 19), and the parties began discovery. Plaintiff served its First Set of Discovery Requests to AmGUARD on August 5, 2020. (Filing No. 40 at CM/ECF p. 2). On September 9, 2020, AmGUARD submitted its Answers to Plaintiff's Interrogatories and its Responses to Plaintiff's Requests for Admissions. (Filing Nos. 41-4 and 41-5). Plaintiff's counsel agreed to extend AmGUARD's deadline for responding to Plaintiff's Requests for Production, and AmGUARD ultimately provided its Responses on October 5, 2020. (Filing No. 41-6).

 On October 23, 2020, Plaintiff's counsel sent AmGUARD's counsel a meet and confer letter, requesting supplementation of certain of AmGUARD's discovery responses. (Filing No. 41-7).  Following up on the letter, on November 17, 2020, counsel discussed the discovery responses via telephone in an effort to come to an amicable resolution. That conference, however, did not resolve the conflict, and the parties contacted the court to set a discovery conference before the undersigned magistrate judge. The discovery conference was held on December 22, 2020. (Filing No. 34). At issue during the conference were AmGUARD's

Answers to Interrogatories Nos. 2, 10, 12(d), 13(d), 18, 19, 20, and 21 and its Responses to Requests for Production Nos. 2, 3, 4, 9, 11, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 40, 44, 45, 46, 47, 48, and 49.

The undersigned discussed the disputed discovery with the parties, outlining preliminary thoughts as they related to the relevancy of the disputed material and the other issues raised. I then instructed the parties to again attempt informal resolution of their dispute. Those attempts were unsuccessful, and Plaintiff filed the instant motion on January 29, 2020, (Filing No. 39). Still at issue are the responses to Interrogatories Nos. 2, 18, 19, 20, and 21 and Requests for Production Nos. 2, 3, 4, 9, 11, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 40, 45, 46, 47, 48, and 49. (Filing No. 40 at CM/ECF p. 4).

The court will address each disputed response below.

LEGAL STANDARD

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, as amended December 1, 2015. Rule 26(b)(1) provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The 2015 Amendment to Rule 26 "restor[ed] proportionality as an express component of the scope of discovery[.]" Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. But, while Rule 26 was amended to include the word "proportional," the concept of proportionality existed under the prior Rule. See Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment ("restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality"). Put differently, the duty of the court to evaluate both the relevancy and proportionality of all discovery remained constant – both before and after 2015.

With that in mind, the court must still satisfy itself that the requesting party has made an initial, threshold showing that the information sought is relevant, prior to turning to the proportionality inquiry. Humphreys & Partners Architects, LP v. Com. Inv. Properties, Inc., 2020 WL 3971604, at *2 (D. Neb. July 14, 2020) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).

"[T]he standard of relevance in the context of discovery is broader than in the context of admissibility." Hofer, 981 F.2d 377, 380 (8th Cir. 1992). "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case…[.]" Marquis ProCap Sys., LLC v. Novozymes N. Am., Inc., 2021 WL 119570, at *3 (D. Neb. Jan. 13, 2021) (citation omitted and emphasis added). But, even if the requesting party meets the low threshold for demonstrating relevancy, the court will then consider whether the discovery is proportional to the needs of the case.

Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 925 (8th Cir. 2014).

4

Instead, the court and the parties must jointly consider the proportionality of the requests at issue: the burden is not rigidly placed on either litigant. As explained by the 2015 Advisory Committee:

> A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. In the end, it is the collective responsibility of the parties and the court to consider the proportionality of all discovery requests. Id.

The court can limit the extent of discovery if it determines the discovery is unreasonably cumulative or duplicative, could be obtained from a more convenient source, or if the expense or burden of discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C)(i); see also Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F. 3d 922, 925 (8th Cir. 1999) ("discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information"). In determining whether to limit discovery, the court should consider and weigh the factors outlined in Rule 26(b)(1): the resources of the parties, their relative access to the disputed discovery, the amount in controversy in the lawsuit, the likely benefit and/or importance of the information to resolving the parties' dispute, and the general importance of the issues at stake in the litigation. Fed. R. Civ. P. 26(b)(1).

DISCUSSION

During the discovery conference on December 22, 2020, the undersigned grouped the disputed discovery requests into ten overarching topics. The universe of disputed requests remains largely the same. So, I will address the discovery utilizing the same topics discussed at the conference and relied upon by Plaintiff in its briefing.

Before turning to each specific subset of discovery requests, the court notes the posture of this case. Plaintiff's complaint alleges two theories of recovery against AmGUARD; that is, Plaintiff seeks damages for breach of contract and for denial of insurance coverage "in bad faith and in violation of Nebraska's Unfair Insurance Claims Settlement Practices Act." (Filing No. 48 at CM/ECF p. 5).

When an allegation of bad faith is properly pleaded, the scope of discovery is broader than in a garden variety insurance contract dispute. See, e.g., Seabron v. Am. Fam. Mut. Ins. Co., 862 F. Supp. 2d 1149, 1157 (D. Colo. 2012), order clarified on reconsideration (June 26, 2012) ("The case for discoverability is much stronger when a bad faith claim is alleged" (citation omitted)). Liability for bad faith may be established where there is no reasonable basis for denial of a claim, and the insurer acted with knowledge or reckless disregard of the lack of reasonable basis for denial. Williams v. Allstate Indem. Co., 266 Neb. 794, 799, 669 N.W.2d 455, 460 (2003). An insured can prove reckless disregard by showing the insurer's decision to deny the claim was not based on or supported by the results of a proper investigation. Ruwe v. Farmers Mut. United Ins. Co., 238 Neb. 67, 74, 469 N.W.2d 129, 135 (1991).

Thus, in bad faith cases, courts have been more willing to expand discovery to allow plaintiffs to probe the insurer's motivation, timeline, and intent in the claims

process. See, e.g., Gronik v. Balthasar, 2013 WL 5376025, at *3 (E.D. Wis. Sept. 24, 2013) ("the scope of discovery in a bad faith action is broader than in a breach of contract action"); Country Club of Fairfield, Inc. v. New Hampshire Ins. Co., 2014 WL 3895923, at *4 (D. Conn. Aug. 8, 2014) (same). That does not mean discovery is unlimited simply because bad faith is pleaded, and a plaintiff in a bad faith case does not have carte blanche access to a defendant insurer's sensitive data. Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 594 (E. D. Pa.1999) ("The court agrees that the bad faith statute is not intended to be a means for individual plaintiffs to attack an entire insurance industry"). The court will consider the scope, burden, temporal boundaries, and proprietary nature of the information sought before it allows a plaintiff to obtain access to an insurer's internal business documents and processes. Santer v. Tchrs. Ins. & Annuity Ass'n, 2008 WL 755774, at *3 (E.D. Pa. Mar. 18, 2008).

With that context in mind, the court now turns to the requests at issue.

I.    Defendant's Business Goals and Results

This topic encompasses Interrogatory No. 18 and Requests for Production Nos. 19, 20, 48, and 49.

Interrogatory No. 18 asks AmGUARD to "describe with specificity AmGUARD's loss ratio goals and actual loss ratios for the years 2017, 2018, and 2019, including how these actual loss ratios were calculated." (Filing No. 41-4 at CM/ECF p. 13). Plaintiff argues the loss ratio goals, and the method of calculation, are relevant to show the "pressures of performance on claims adjusters." (Filing No. 40 at CM/ECF p. 11). If those adjusters were overly incentivized to minimize loses – based on the company's stated goals – then, Plaintiff claims, evidence of those goals and their calculation method is relevant in determining whether an

insurer engages in a bad faith pattern of underpaying for covered losses. (Filing No. 40 at CM/ECF pp. 11-12). Plaintiff asserts that practice would be relevant to their allegation bad faith claim.

AmGUARD disagrees. AmGUARD claims that only the objective, case specific facts are relevant to both the contract and bad faith claims because "if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith." (Filing No. 46 at CM/ECF p. 7) (quoting Radecki v. Mutual of Omaha Ins. Co., 583 N.W.2d 320,255 Neb. 224, 229 (1998)). AmGUARD argues that only discovery as to whether AmGUARD had a "reasonable basis" for denial of Plaintiff's claim can be relevant. (Filing No. 46 at CM/ECF p. 9).

While AmGUARD has correctly stated the legal standard for bad faith, its view of the scope of civil discovery is too narrow. Ultimately, the trier of fact will have to decide whether AmGUARD has stated a legally sufficient reason to deny Plaintiff's coverage. Perhaps the fact finder will agree with AmGUARD's explanation for denying Plaintiff's claims. But at this stage of the litigation, Plaintiff does not have to simply take AmGUARD at its word and limit the scope of discovery accordingly. Other courts in the Eighth Circuit have agreed, allowing discovery of a defendant insurer's loss ratio information in insurer bad faith claims. See Lillibridge v. Nautilus Ins. Co., 2013 WL 1896825 (D. S.D. May 3, 2013).

Plaintiff is within its right to formulate its own reasonable theory of the case and to pursue proof thereof. Plaintiff is seeking information to show its claims were denied or underpaid because the adjuster felt internal pressure to meet the company's goals on the amount of losses paid out to insureds, and not for the reasons stated by AmGUARD. That information could prove or lead to evidence proving that AmGUARD did not premise its denial on a reasonable investigation

and instead denied the claim based on a bad faith desire to meet revenue goals. Ruwe, 238 Neb. 67, 74, 469 N.W.2d 129, 135; see also Lillibridge, 2013 WL 1896825.

Interrogatory No. 18 is reasonably calculated to lead to evidence of such a rationale. Plaintiff has therefore demonstrated relevancy. Fed. R. Civ. P. 26(b)(1). And, the court finds that the proportionality factors in Rule 26 also militate toward allowing this discovery. AmGUARD has not argued that the information sought is proprietary and/or confidential, or that the burden or expense of production would be undue. AmGUARD does not claim Plaintiff could obtain this information from another source. The record, based on a review of both the discovery objection in question, the arguments in the briefing, and the evidence attached to motion, does not provide the court with a sufficient basis to conclude that the benefit of this discovery is outweighed by any burden on AmGUARD. The court will compel AmGUARD to fully answer Interrogatory No. 18, as drafted.

The Requests for Production at issue in this category seek AmGUARD's: (1) "annual [financial] statements (Request No. 19);" (2) "profits and losses as well as salaries paid to Defendant's top three officers (Request No. 20);" (3) the "Intercompany Services and Cost Sharing Agreement (Request No. 48);" and (4) the "Tax Allocation Agreement between Defendant and Berkshire Hathaway (Request No. 49)." (Filing No. 41-6 at CM/ECF pp. 15-16, 25).

Plaintiff claims that the above requests are relevant as potential evidence of a "pattern and practice on a macro-level" that demonstrates that AmGUARD denies or delays claims or underpays for covered damages in a bad faith effort to pad their "bottom line." (Filing No. 40 at CM/ECF p. 12). AmGUARD does not specifically address any of the above responses in its briefing. In its discovery responses, AmGUARD objected to Request Nos. 19 and 20, stating that the

documents sought were irrelevant and proprietary. AmGUARD objected to Request No. 48 and 49 as "immaterial and irrelevant" but not as proprietary. (Filing No. 41-6 at CM/ECF pp. 15-16, 25).

These requests are extremely broad, and the court has located no case – either persuasive or controlling – that has allowed this type of wholesale discovery into a defendant insurer's general financial situation. For example, in Kirschenman v. Auto-Owners Ins., the principal case cited by Plaintiff in support of these requests, the court allowed discovery of some financial data, but only as it related to "efforts to increase" profitability and cost containment in the handling of claims. Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 483 (D.S.D. 2012), objections overruled, 2012 WL 13040020 (D.S.D. Apr. 18, 2012). The Kirschenman plaintiff was not looking for the defendant insurer's actual profitability or overall financial health. Rather, the requests were related to "company programs, campaigns, or initiatives" designed to incentivize employees to contain costs, limit loss ratios, and boost profitability.  While the request for loss ratio information in Interrogatory No. 18 is specifically linked to employee incentivization, as was allowable in Kirschenman and Lillibridge, the broad financial information sought here is not.

Plaintiff seeks evidence of a pattern or practice of widespread, bad faith claims denial based solely on financial incentive to AmGUARD, but it has not provided the court with sufficient evidence or argument that these general requests related to AmGUARD's financial situation are relevant to that goal. The court will not, on this showing, compel response to Request Nos. 19, 20, 48 or 49.

II.    Marketing and Sales

This topic encompasses Requests for Production Nos. 27 and 40.

Request for Production No. 27 seeks

All training materials, handbooks, claim guidelines, manuals or memoranda of any kind used by Defendant in training insurance agents and agency staff personnel, or any other individual involved in the sale, renewal and/or marketing of commercial property owners windstorm or hail insurance policies in the State of Nebraska from 2017 to 2020.

(Filing No. 41-6 at CM/ECF p. 18). AmGUARD did not object but indicates in its response that it is "determining whether such materials exist." (Filing No. 41-6 at CM/ECF p. 18). In its briefing, AmGUARD claims that "such materials, if any exist, would fall under the purview of insurance agents, not [AmGUARD], and [AmGUARD] does not believe it has any such materials in its possession." (Filing No. 46 at CM/ECF p. 10).

As the court reads this request, it appears to seek training materials, manuals, and the like, prepared by AmGUARD, outlining AmGUARD's requirements for agents selling or marketing its policies. It seems then, even if AmGUARD gave copies to its agents in order to facilitate that training, AmGUARD would retain possession of a master draft or copy of its own training materials. It does not seem likely that AmGUARD allows individual agents to create and implement their own standards for marketing and renewal of AmGUARD policies without any participation and/or approval by AmGUARD of those materials. To the extent AmGUARD has misread this request, it should supplement its response.

And, Fed. R. Civ. P. 34(a) allows for discovery of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34 (emphasis added). "[C]ontrol is defined as the legal right, authority, or ability to obtain upon demand documents in the possession of another." Myers v. Blumenthal, 2014 WL 4264788, at *6 (D. Neb. Aug. 28, 2014). It appears to the court that, at the very

11

least, AmGUARD would be able to obtain these policies and training materials from their agents. If these documents exist, and AmGUARD has the legal ability to obtain them, they must be fully produced.

If AmGUARD has no copies of or control over those documents and has no legal ability to obtain them from their agents, it must supplement its response to Request No. 27 clarifying the situation. It may not now lodge an objection. AmGUARD did not timely object to production of these materials in its discovery responses, and any otherwise valid objection is waived. LOL Fin. Co. v. Johnson, 2010 WL 3020022, at *1 (D. Neb. July 22, 2010).

Request No. 40 seeks "any and all policies, manuals, guidelines, memorandums, or other documents establishing Defendant's standards for renewal and non-renewal of an existing commercial property insurance policy that were in effect between January 1, 2017 and April 29, 2020." (Filing No. 41-6 at CM/ECF p. 22). AmGUARD objects to this request as irrelevant. (Filing No. 41-6 at CM/ECF p. 22).

The court finds that the foregoing is relevant to Plaintiff's bad faith claim. How AmGUARD determines whether it will retain a policy is relevant. For example, Plaintiff argues that after it reported the damage to the Subject Properties, AmGUARD renewed Plaintiff's policy but "the amount owed by Plaintiff to AmGUARD increased by 48.9% while the quality of coverage provided by AmGUARD significantly and simultaneously decreased." (Filing No. 40 at CM/ECF p. 14). While AmGUARD may have a perfectly reasonable explanation for its actions, Plaintiff may probe its theory that AmGUARD has a pattern or practice of training its employees to contain costs and increase profitability, including by imposing substantial premium increases or policy amendments, without regard to the specific facts presented by each insured property. For the same reason as

above, Plaintiff is entitled to reasonably seek evidence that supports its theory that AmGUARD's macro-level policies trickled down to Plaintiff and affected the handling of the disputed claims. This request is relevant and proportional to that aim.

III.    Incentives

This topic encompasses Interrogatory Nos. 20 and 21, and Requests for Production Nos. 14, 21-26 and 30.

The foregoing interrogatories and document production requests all target information related to potential incentives paid to employees for marketing and renewal of AmGUARD policies, as well as any potential incentives related to the handling of first party property claims in Nebraska. This category also seeks information related to the potential incentives to third party contractors hired by AmGUARD to assist in the adjustment of hail loss claims in Nebraska.

Interrogatory Nos. 20 and 21 ask for information related to Engle Martin & Associates ("Engle Martin") and Rimkus Consulting, Inc. ("Rimkus"). Both Engle Martin and Rimkus were hired to assist in the assessment of damages to the Subject Properties. Plaintiff asks AmGUARD to provide the total number of claims on which AmGUARD asks either Engle Martin or Rimkus to assist in the adjustment process for property claims in 2017, 2018, 2019 and 2020. (Filing No. 41-4 at CM/ECF pp. 13-14). These interrogatories also request the total amount paid to both Engle Martin and Rimkus for their work assessing damage to AmGUARD insured properties.

Plaintiff claims that the foregoing information is relevant because, based on information and belief, Engle Martin and Rimkus are enlisted by AmGUARD to

13

adjust claims frequently. Thus, because AmGUARD employs Engle Martin and Rimkus in such a consistent capacity, they may be incentivized to favor AmGUARD in the adjustment process, i.e. they may under-assess damages in order to boost AmGUARD's profitability. (Filing No. 40 at CM/ECF p. 18)

AmGUARD argues that "any attempt to show bias, [is] totally immaterial and irrelevant." (Filing No. 46 at CM/ECF p. 10). AmGUARD claims that only the facts known to AmGUARD at the time of the adjustment are relevant, and the insurer need only state <u>any</u> reasonable basis to deny the claim. Therefore, AmGUARD asserts, even if there was some ulterior motive or some nefarious under-assessment by Engle Martin or Rimkus, that is irrelevant so long as Defendant can state some other, reasonable basis for the denial. (Filing No. 46 at CM/ECF pp. 10-11); <u>see</u> <u>also</u> (Filing No. 46 at CM/ECF p. 7) ("A lawful basis exists if any single reason for an insurer's denial of coverage 'is at least arguable.'" (quoting Radecki v. Mutual of Omaha Ins. Co., 583 N.W.2d 320,255 Neb. 224, 229(1998)). Perhaps AmGUARD will prevail. However, that does not render the potential motive or bias irrelevant. Put differently, this type of information could be used to undercut AmGUARD's assertion that it conducted a proper investigation. It could also be used to attack the credibility of the Engle Martin or Rimkus damage assessments; that is, that Plaintiff's breach of contract damages are greater than the amounts disclosed by Engle Martin or Rimkus.

The court has not found that AmGUARD had a reasonable basis for how it handled and/or paid Plaintiff's claims. The reasonableness of AmGUARD's decisions remain an open question to be litigated and to be determined by the fact finder. The finder of fact may ultimately determine that Plaintiff's recovery is barred because AmGUARD has offered proof of a reasonable claim denial. But until that happens, if ever, Plaintiff is allowed to pursue discovery to prove the denial, delayed assessment, and/or underpayment of Plaintiff's claims was <u>not</u> the result

of a reasonable, good faith investigation. AmGUARD cannot limit Plaintiff's investigation of this case simply because it believes its own theory will win the day. Interrogatory Nos. 20 and 21 are relevant.

They are also proportionate to the needs of the case. The information is central to Plaintiff's theory, and AmGUARD has done nothing to "quantifiably explain" any burden it would incur if compelled to produce this information. Vallejo v. Amgen, Inc., 903 F.3d 733, 740 (8th Cir. 2018). There is no evidence that answering these interrogatories would be unduly burdensome or that Plaintiff might obtain this information elsewhere. Indeed, other courts have recognized that in a lawsuit alleging bad faith on the part of the insurer, the insurer often has a "virtual monopoly over the evidence required to support such an action." Seabron, 862 F. Supp. 2d at 1157. AmGUARD must fully respond to Interrogatory Nos. 20 and 21.

And for the same reasons, Request Nos. 21-26 are also relevant and proportional. Those requests ask for documents reflecting the foregoing arrangements with and payment history to Engle Marin and Rimkus. The court will require production.

As to Request for Production No. 14, AmGUARD has withdrawn its objection, but is withholding production "subject to court *in camera* review for relevancy." (Filing No. 41-19 at CM/ECF p. 13). AmGUARD has not formally requested *in camera* review – it just incorporated its desire for court review into its response to this discovery request. Its brief in opposition to the motion to compel does not elaborate as to why *in camera* review is necessary. And, before AmGUARD withdrew its objection and agreed to produce this information subject to review by the court, it never claimed that this information was proprietary or confidential. AmGUARD's original response to Request No. 14 objected only on relevancy. (Filing No. 41-19 at CM/ECF p. 13). The court may have allowed for

limited *in camera* review if AmGUARD had made some claim of privilege, confidentiality, trade secret or the like. It has not, and the court does not conduct *in camera* review of documents simply to determine whether and to what extent the contents are relevant. AmGUARD's request for *in camera* review is denied. It shall produce the documents, as requested.

IV.   People Involved

This topic encompasses Interrogatory No. 2 and Requests for Production of Documents Nos. 28, 29, 31, and 32.

Interrogatory No. 2 asks AmGUARD to identify "each and every person who had any role whatsoever in setting up, working on, or adjusting any of Plaintiff's claims for damages to the Subject Properties." (Filing No. 41-4 at CM/ECF p. 5). The parties agree that AmGUARD must supplement its response to this interrogatory to include all relevant persons. To the extent that supplementation has not occurred, AmGUARD will be compelled to supplement this response.

Requests for Production of Documents Nos. 28, 29, 31, and 32 ask for production of the personnel files and the performance reviews of the individuals specifically involved in the handling of Plaintiff's claims. (Filing No. 41-6 at CM/ECF pp. 18-20). Plaintiff claims that these documents are relevant "because AmGUARD relied on its employees' decisions, estimates, and evaluations in handling Plaintiff's claims. It is thus critical for Plaintiff to discover whether such employees were capable, competent, and/or qualified to take the actions they took and to make the decisions they made." (Filing No. 40 at CM/ECF p. 25). AmGUARD again claims that the information is irrelevant, because

16

> any information about the adjuster, claims supervisors, etc. contained in personnel files is irrelevant to whether or not the adjuster had a reasonable basis for making the decision he did based on the facts known to him when the decision was made. Any merit awards, disciplinary actions, etc. contained in a personnel file have no relevance to determining if Defendant had a reasonable basis for making the decision it did in regards to the Plaintiff's claims.

(Filing No. 46 at CM/ECF p. 11). However, information about incentives earned (and on what they were based), or disciplinary actions taken (and why) may be relevant to how the involved individuals handled this claim. Other courts in the Eighth Circuit agree and have allowed discovery of personnel files in first party insurance bad faith claims. See, e.g., Hoyme v. Allied Prop. & Cas. Ins. Co., 2009 WL 10722466, at *3 (D.S.D. Dec. 1, 2009). But, "[t]he highly personal and private nature of information in a personnel file compels careful consideration of this request and limitation to no more than that clearly material to the claims or defenses asserted." Hill v. Auto Owners Ins. Co., 2015 WL 1280016, at *3 (D.S.D. Mar. 20, 2015).

After consideration of the relevancy of this information in proportion to the needs of this case, the court will compel limited production of the personnel files. The court finds that Plaintiff has stated a sufficient bases to obtain the file of William Ardoline, the adjuster who personally handled Plaintiff's claim, as well as the personnel file of his direct supervisor, Nona Loftus. The performance reviews, including eligibility for incentive payments, of those two individuals are likewise discoverable. The court will compel production of the requested documents in Request Nos. 28, 29, 31 and 32, as limited here and subject to the proposed redactions outlined within the requests.[1]

---

[1] AmGUARD again seeks *in camera* review of these documents prior to production, but it had not elaborated on that request in its briefing or made a formal request to the court. The court finds that production to Plaintiff, subject to the parties' protective order (Filing No. 20) and the proposed redactions, is sufficient.

V.    Pattern and Routine of Denying Claims

This topic encompasses Requests for Production Nos. 2, and 15-17.

Request No. 2 asks for production "each and every complaint made by AmGUARD's insureds in Nebraska against AmGUARD during the past five years concerning the manner in which any first party Businessowners' property claim was handled." (Filing No. 41-6 at CM/ECF p. 4).

For largely the same reasons as repeatedly addressed above, Plaintiff claims that Request No. 2 relevant to whether AmGUARD acted in bad faith when adjusting Plaintiff's claims. (Filing No. 40 at CM/ECF p. 26).  AmGUARD, again for largely the same reasons as addressed above, claims that even if AmGUARD "had a history of questionable claims denials, or if it has a history of exceptional claims handling, either scenario does not create a scintilla of evidence as to whether Defendant had a reasonable basis to decide these claims the way it did based on the facts known to it." (Filing No. 46 at CM/ECF p. 12).

Some courts have been wary of discovery into unrelated complaints and past claims handling, citing confidentiality concerns for the other insureds. See, e.g., Collins v. JC Penney Life Ins. Co., 2003 WL 25945842, at *5 (S.D. Cal. May 6, 2003). And other courts have noted that evidence of the handling of other claims – even the mishandling of other claims – comes dangerously close to the kind of propensity evidence our judicial system, as a general principle, seeks to avoid. See Geico Cas. Co. v. Beauford, 2006 WL 4774798, at *1 (M.D. Fla. Aug. 22, 2006).  Some jurisdictions, however, have found narrowly tailored requests for past complaints relevant to an asserted pattern or practice of bad faith claim denial. Beyer v. Medico Ins. Grp., 266 F.R.D. 333, 339 (D.S.D. 2009). The determination is fact specific and should consider the specific discovery request at issue and the

facts and circumstances of the case presently before the court. Beauford, 2006 WL 4774798, at *1.

Plaintiff tailored its requests geographically (to Nebraska), temporally (to the last five years) and topically (to hail damage). On balance, the court find the request reasonably tailored and relevant to Plaintiff's theory of bad faith. Plaintiff is entitled to explore its own theory as to the basis for denial, irrespective of AmGUARD's contention that its explanation is the only one relevant.  AmGUARD will produce the documents responsive to Request No. 2.[2]

Request No. 15 asks for copies of "quality control audits or surveys" related to the handling of hail claims in Nebraska in 2017 through 2019, (Filing No. 41-6 at CM/ECF pp. 13-14), and Request No. 16 seeks "quality control audits" specifically related to Plaintiff's claims, (Filing No. 41-6 at CM/ECF p. 14). AmGUARD objects on relevancy but, in supplemental responses to each request, indicates that no responsive documents exist. (Filing No. 41-19 at CM/ECF p. 14). There is nothing in the record to suggest that AmGUARD's assertion is disingenuous. Plaintiff indicates in its briefing that AmGUARD may be "wordsmithing" the request to avoid producing responsive documents. But that assertion is purely conjecture. The request is clearly worded, and the court finds no obvious risk that the parties are defining a term within either request in fundamentally different ways. To the extent a disagreement in the meaning and scope of this request comes to light, the court can revisit this issue. As it stands, there is nothing to compel.

---

[2] AmGUARD claims that Plaintiff has equal access to public complaints made against AmGUARD. While Plaintiff might have the ability to obtain complaints made to the Nebraska Department of Insurance, the burden is on the producing party, unless that burden is undue. There is no evidence that AmGUARD's production of the complaints would be an undue burden. AmGUARD must compile and produce the public complaints, along with all other responsive documents.

Request No. 17 asks for "claim committee" documents, including "reports, committee minutes, memos, or written notes prepared or taken in connection with any meetings held relating to each and every claim opened in relation to claimed damages to the Subject Properties." (Filing No. 41-6 at CM/ECF p. 14). AmGUARD stands on its assertion that it has no responsive documents. (Filing No. 46 at CM/ECF p. 12).   As with Request Nos. 15 and 16, the court cannot compel production of documents that do not exist.

VI.   Business Successes

This topic encompasses Interrogatory No. 19, which requests "the number of Businessowners' property insurance claims submitted to AmGUARD in 2017, 2018, and 2019, arising, in whole or in part, out of wind and/or hail damage in Nebraska or the region/district/division designated by you to include Kearney, Nebraska." (Filing No. 41-4 at CM/ECF p. 13).

 Plaintiff argues that the total number of hail damage claims is relevant to contextualize the total number of complaints (sought in Request for Production No. 2).  Put differently, knowing both the total number of claims and the total number of complaints will allow Plaintiff to proportionally assess the frequency of complaints, which depending on the outcome, would either bolster or undercut Plaintiff's bad faith "pattern or practice" theory. (Filing No. 40 at CM/ECF p. 30). As has consistently been AmGUARD's position, it argues that "Plaintiff is fishing for evidence it can use to show an institutional pattern of conduct, conduct not relevant to this lawsuit because it neither proves nor disproves any facts on which Defendant based its reasonable decisions on Plaintiff's claims." (Filing No. 46 at CM/ECF p. 13).

Hereinabove, the court found that the total number of complaints against AmGUARD, specifically in hail damages claims, in Nebraska, in the last five years, were relevant. The court finds that the total number of claims is likewise relevant. But, the court notes that the responsive documents should be limited to claims where the predominate cause of loss arises out of wind or hail damage, in Nebraska, and only for the years requested.

VII.    Insuring Plaintiff's Properties

This topic encompasses Request for Production Nos. 4 and 34. Request No. 4 seeks "a complete copy of the underwriting file(s)" for the Subject Properties, (Filing No. 41-6 at CM/ECF pp. 8-9), and Request No. 34 seeks "copies of any application(s) and reapplication(s) for insurance submitted to AmGUARD by Plaintiff, including "all photographs, inspection sheets, underwriting analysis, and other documentation relating to the condition of the Subject Properties following Plaintiff's submission of said insurance application(s) and/or reapplication(s)," (Filing No. 41-6 at CM/ECF p. 20).

In its briefing AmGUARD "agrees it made no objection to [R]equest No. 34, and also agrees Request No. 4 may bear relevancy to this lawsuit, so these items will be produced subject to any claim of privilege." (Filing No. 46 at CM/ECF p. 13).

It appears that this dispute is resolved. However, the court will also formally compel production, so that expectations and deadlines are clear. Production of these documents (to the extent they have not been previously produced) must be made on or before the supplemental response deadline set at the conclusion of

21

this order. AmGUARD must also formally supplement its response to Request No. 4 to reflect the withdrawal of its objection.[3]

VIII.    Loss Reserves

This topic encompasses Request for Production No. 11. At the telephonic conference held on December 22, 2020, the court and the parties discussed this request at length, and the court instructed the parties to continue good faith discussions. Request No. 11 asks for

> any and all documents showing loss reserve history relating to each and every claim opened in relation to claimed damages to the Subject Properties relating to Policy Nos. TIBP876132; TIBP880809; TIBP992073; and/or TIBP992085, including but not limited to original reserves; all changes to reserves; reasons for changes to reserves; and Defendant's methods and criteria for setting reserves.

(Filing No. 41-6 at CM/ECF p. 12).  Many jurisdictions have determined that loss reserves are relevant in first party bad faith claims against an insurer. See U.S. Fire Insurance Co. v. Bunge North America, Inc., 244 F.R.D. 638, 645 (D. Kan. 2007) ("the actual amounts of the Insurers' loss reserves-including any changes to those amounts-could, at the least, lead to admissible evidence relating to the Insurers' own beliefs about coverage and their liability, as well as their good or bad faith in handling and investigating [the insured's] claims."); Flintkote Co. v. General Acc. Assur. Co. of Canada, 2009 WL 1457974, at *4–5 (N.D. Cal. May 26, 2009) ("the reserves may indicate an estimate of the amount that defendant believed or knew it would have to pay for plaintiff's ... claims" and "may assist plaintiff in evaluating its bad faith claim and preparing it for trial."); Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 139 (S.D.N.Y.2012) ("information

---

[3] To the extent AmGUARD has changed its position on Request No. 4 and plans to maintain its objection, its relevancy objection is overruled.

concerning the reserve information" would support "claims that [insurer] failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of [insured's] claims").

That said, an insurer may protect calculation of loss reserves pursuant to the work product privilege doctrine, where the reserve calculations were made in anticipation of litigation. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). AmGUARD filed a "Notice of Privilege Log" in this case, (Filing No. 24), which lists responsive documents that AmGUARD believes are subject to either attorney-client or work product privilege. Calculation of loss reserves are not listed within AmGUARD's log. Strictly speaking, AmGUARD likely did not list the loss reserves because, when it prepared the privilege log, AmGUARD maintained that the loss reserve information was irrelevant, and thus not subject to disclosure on the log pursuant to Fed. R. Civ. P. 26(b)(5). Failure to list the reserve calculations on the log is not dispositive.

It is unclear when, exactly, AmGUARD would have started taking actions "in anticipation of litigation." Searle & Co., 816 F.2d at 401. The oldest items on the privilege log are dated April 30, 2020, but the first disputed claim payment was remitted to Plaintiff on September 4, 2019. And the lawsuit was filed on December 16, 2019. (Filing No. 41-35 at CM/ECF p. 3). In the court's view, any loss reserve calculation made after September 4, 2019 would arguably have been made in anticipation of litigation. The tenor of the dispute, and the likelihood that a lawsuit would result, seems to have likely been apparent to both parties after that first disputed payment.

Having weighed the law and the specific timeline of this case, the court will compel production of all information responsive to Request No. 11, generated prior to September 4, 2019. Any responsive loss reserve information from after

September 4, 2019, created with the input of counsel and/or in preparation for litigation, must be listed on a Rule 26(b)(5) privilege log. And, if AmGUARD believes in good faith that any responsive loss reserve information was prepared in anticipation of litigation <u>before</u> September 4, 2019, it must seek leave of court before it withholds those documents based on a claim of work product privilege.[4]

IX.    Claims File

This topic encompasses Request No. 3, which seeks a copy of AmGUARD's entire claims file. (Filing No. 41-6 at CM/ECF pp. 5-8).  AmGUARD and Plaintiff agree that AmGUARD has previously produced more than 3,000 pages of documents that AmGUARD argues comprise the entire claims file(s) for the disputed claims. (Filing No. 46 at CM/ECF pp. 13-14). Plaintiff believes that additional responsive documents may exist but were not included by AmGUARD in its production, based on a narrower definition of "claims file" utilized by AmGUARD.  (Filing No. 40 at CM/ECF pp. 32-33).

As the undersigned discussed with the parties on December 22, 2020, the court was willing to allow Plaintiff to lodge limited, additional document production requests, targeting information it has reason to believe exists, is relevant to this claim, but may not have been captured by production of the "claims file" specifically. It does not appear that Plaintiff did so, and the court is not willing to allow additional discovery requests now that three additional months have elapsed.

---

[4] It appears that AmGUARD believes that all actions taken after August 20, 2019 were "in anticipation of litigation" because Plaintiff sent the adjuster an email on that date saying that he would hire an attorney if AmGUARD did not resolve his claim "within a week."  (Filing No. 41-35 at CM/ECF p. 2). The court finds insufficient support, on this record, for use of that date. AmGUARD did not issue a disputed payment until September 2019 or retain counsel until sometime in early 2020. The lawsuit was filed in December 2019. To the extent specific, disputed documents were created by AmGUARD in the two weeks between August 20, 2019 and September 4, 2019, AmGUARD will be allowed to seek leave of court to assert its privilege, and the court will evaluate the disputed information.

If AmGUARD uncovers additional information responsive to Request No. 3, it must produce it. But, at this point, it does to appear there is anything to specifically compel as it relates to Request No. 3.

X.    Additional At-Issue Requests

This topic encompasses Requests for Production Nos. 9, 35, and 45-47.

Request No. 9 asks for

> All claims manuals, policies and procedures, guidelines, operation guides, memoranda, directives, letters, and other forms of written communication in effect in 2017, 2018, and 2019 in Nebraska and directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of AmGUARD in the handling of claims, that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claims at issue in this action.

(Filing No. 41-6 at CM/ECF pp. 11-12). In response, AmGUARD says it "will produce a 2017 claims manual for handling property damage claims." (Filing No. 41-6 at CM/ECF p. 12). AmGUARD did not otherwise object to this request. Thus, regardless of any relevancy or proportionality analysis, AmGUARD's objection is waived. LOL Fin. Co. v. Johnson, 2010 WL 3020022, at *1 (D. Neb. July 22, 2010) ("failure to make a timely objection to a request for production or interrogatories results in a waiver of any otherwise-valid objection"). The court cannot infer an objection not specifically lodged, and AmGUARD must fully answer this request, as drafted. Likewise, AmGUARD has not objected to Request Nos. 45-47, any objection is waived, and it must fully respond to those requests, as well.

25

Request No. 35 seeks "documents relating to the calculation of premiums for Plaintiff's insurance policies, or any component of Plaintiff's policies if calculated separately, from January 1, 2017 to February 1, 2020." (Filing No. 41-6 at CM/ECF p. 20). AmGUARD objected to this request as overly broad, irrelevant and as seeking propriety information. In its briefing, AmGUARD makes the same relevancy argument that it has lodged to the lions' share of disputed requests: Because bad faith is evaluated on an objective standard, only information related narrowly to the assessment of the claim is relevant. (Filing No. 46 at CM/ECF p. 14).  As with the above, that argument is unavailing.

Documents reflecting the calculation of Plaintiff's premiums is reasonably calculated to obtain information related to AmGUARD's inspections of the Subject Properties, value assessment of the Subject Properties, and other information considered by AmGUARD related to the condition of the Subject Properties. AmGUARD's internal position on the value of the property and the valuation of a continued insurance relationship could be relevant to how it then handled these disputed claims. This discovery is reasonably calculated, and production will not impose more than a minimal burden—certainly not undue burden—on AmGUARD. These documents shall be produced, subject to the parties' protective order.

## CONCLUSION

For all the reasons stated hereinabove, Plaintiff's motion is granted in part and denied in part. The parties are instructed to work in good faith to facilitate the supplemental production of documents and to attempt to resolve any ancillary disputes that may arise surrounding this extensive, additional discovery.

Accordingly, IT IS ORDERED:

1)   Plaintiff's Motion to Compel (Filing No. 39) is granted in part and denied in part, as outlined in this order.

2)   On or before May 7, 2021, AmGUARD shall supplement its responses to the disputed discovery and make a supplemental production of documents consistent with this order.

3)   If a dispute regarding the application and compliance with this order arises,  on or before May 24, 2021, the parties shall contact the court, at zwart@ned.uscourts.gov, for a discovery dispute conference  prior to filing any additional discovery motion related to the issues addressed and resolved herein.

Dated this 23rd day of March, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge