IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMM GRANDVIEW, LLC, a Nebraska Limited Liability Company, | |
| Plaintiff, | **8:20-CV-197** |
| vs. | |
| AMGUARD INSURANCE COMPANY, a Pennsylvania Company; and WESTGUARD INSURANCE COMPANY, a Pennsylvania company, | **MEMORANDUM AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT, MOTIONS IN LIMINE, AND MOTION TO STRIKE** |
| Defendants. | |

## I.    INTRODUCTION

Timm Grandview, LLC, (Timm) has sued AmGuard Insurance Company (AmGuard) and WestGuard Insurance Company (WestGuard) for breach of contract and for breaching the covenant of good faith and fair dealing. Filing 65 at 1–14. Plaintiff and Defendants have cross-moved for summary judgment on each of Timm's claims. Filing 172; Filing 174. Plaintiff has also filed two Motions in Limine to exclude or limit the testimony of two of Defendants' experts, Filing 163; Filing 169, and a Motion to Strike a meteorology report and prohibit its introduction at trial. Filing 166. For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion for Summary Judgment, denies Timm's Motion for Summary Judgment, denies both of Timm's Motions in Limine, and grants Timm's Motion to Strike.

1

## II.     BACKGROUND[1]

Plaintiff Timm is a Nebraska single-asset limited liability company that owns an apartment complex in Kearney, Nebraska, called the "Grandview Apartments." Filing 65 at 1; Filing 175-5 at 3; Filing 175-12 at 13. The Grandview Apartments consists of two properties: "Avenue R" and "45th Street." Filing 175-4 at 2–3; Filing 175-5 at 2–3.

Defendant AmGuard, an insurance company, issued two insurance policies to Timm, one for each of the properties making up the Grandview Apartments. Filing 177-1; Filing 177-2 at 1. Both policies had a coverage period lasting from February 1, 2017, to February 1, 2018. Filing 177-1; Filing 177-2 at 1. The policies required Timm to provide AmGuard with "prompt notice of the loss or damage" and to "cooperate with [AmGuard] in the investigation or settlement of the claim." Filing 175-1 at 86; Filing 175-2 at 98. The polices also contained "no action" provisions that prohibited Timm from suing AmGuard unless Timm was in "full compliance with all of the terms" of the insurance policies. Filing 175-1 at 86; Filing 175-2 at 99.

---

[1] The facts are undisputed unless stated otherwise. Moreover, the Court notes that Defendants did not provide pinpoint citations to evidence for several paragraphs in their statement of undisputed facts in their summary judgment motion as required by the Court's local rules. *See* Filing 173 at 13–15; NECivR 56.1(a)(2) (mandating that the statement of facts in the moving party's brief "should consist of short number paragraphs, each containing pinpoint references to" evidence in the record (emphasis removed)). The Court further notes that Defendants failed to provide pinpoint citations in their response to Timm's statement of undisputed facts in Timm's summary judgment motion, which is also required by the Court's local rules. *See* Filing 185 at 4–16; NECivR 56.1(b)(1) (mandating that the nonmoving party must respond to the moving party's statement of facts and that each fact in response "must include pinpoint references to" evidence in the record). The failure to provide pinpoint citations is grounds to deny Defendants' Motion and to deem Timm's statement of facts that Defendants failed to properly controvert as true. *See* NECivR 56.1(a)(2); NECivR 56.1(b)(1). It is within this Court's discretion to enforce its local rules. *See Reasonover v. St. Louis Cnty., Mo.,* 447 F.3d 569, 579 (8th Cir. 2006) ("District courts have broad discretion to . . . enforce local rules."). Given the vast factual record before the Court, which includes thousands of pages of exhibits filed in the Court's docket, it was extremely important for Defendants to comply with the Court's local rules and provide pinpoint citations to the record. The Court is not required to scour the record for evidentiary support for Defendants' factual statements. *See* Fed. R. Civ. P. 56(c)(3) (stating that courts "need consider only the cited materials"); *see also* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party asserting or disputing a fact to cite "particular parts of materials in the record"). Accordingly, the Court will accept Timm's statement of facts as true to the extent they are supported by the record where Defendants failed to properly controvert them and will not consider Defendants' statement of facts for which they failed to provide pinpoint citations.

AmGuard is a wholly owned subsidiary of WestGuard. Filing 10 at 2; Filing 175-1 at 2. Pursuant to an "Intercompany Agreement," WestGuard provides claim handling services to AmGuard for Amguard's insurance policies and indemnifies Amguard for any "gross negligence or willful misconduct or breach of contract in providing services" under the agreement. Filing 106-9 at 1–2. AmGuard does not have any employees handling its claims and underwriting services; instead, WestGuard's employees handle claims and underwriting for AmGuard. Filing 175-3 at 5–6.

On August 19, 2017, a hailstorm damaged both the Avenue R and 45th Street properties making up the Grandview Apartments. Filing 165-21 at 1; Filing 175-4 at 4. A little over a year later, on September 28, 2018, Timm reported its claims for hail damage to AmGuard. Filing 41-1 at 1. Timm states that it delayed reporting the damage to the Grandview Apartments because, after the storm, it did not know the extent of the damage and whether the damage required making an insurance claim and did not want to make an unnecessary claim that could raise its insurance rates. Filing 190-1 at 8–9.

After receiving Timm's claims for hail damage, AmGuard opened two claims under Timm's insurance policies.[2] Filing 41-1 at 1. WestGuard employee William Ardoline, a claims adjuster, handled Timm's claims on AmGuard's behalf. Filing 41-1 at 1. Ardoline's task was to decide whether and to what extent to cover the damage to the Grandview Apartments. Filing 177-6 at 2–3. To assist him, Ardoline selected Engle Martin & Associates (Engle Martin) as an independent adjuster for Timm's claims. Filing 106-10 at 11. Engle Martin assigned one of its adjusters, Broc Beaver, to investigate the damage to the Grandview Apartments. Filing 165-2 at 2.

---

[2] AmGuard initially opened two claims under one of Timm's insurance policies but later transferred one of the claims to the other insurance policy when it realized the error. Filing 177-4 at 1.

3

Beaver visited the Grandview Apartments to inspect the Avenue R and 45th Street properties on October 10, 2018. Filing 165-3 at 1–2; Filing 165-7 at 1–2. After his initial inspection, Beaver sent Ardoline initial reports for each property in which he recommended retaining an engineer to help assess the damage. Filing 165-3 at 2; Filing 165-7 at 2. Ardoline approved retaining an engineer and directed Beaver to utilize Rimkus Consulting Group, Inc., (Rimkus). Filing 41-3 at 1; Filing 175-4 at 5. Rimkus assigned Brandon Kyle, one of its engineers, to inspect the Grandview Apartments. Filing 175-4 at 5.

On January 2, 2019, Kyle issued a report for the Avenue R property in which he concluded that the damage occurred as a result of a hailstorm on May 10, 2018.[3] Filing 47-4 at 4–6. Although not entirely clear from the record, it appears that Kyle reached this conclusion by erroneously believing that the reported date of loss was August 19, 2018, rather than August 19, 2017. Filing 184-14 at 2. When he realized his error, Kyle issued a supplemental report on January 11, 2019, for the Avenue R property in which he concluded that multiple previous hailstorms, including the August 19, 2017, hailstorm, caused the damage to the Avenue R property. Filing 184-13 at 2–3. On February 1, 2019, Kyle issued a report for the 45th Street property, in which he similarly concluded that multiple hailstorms dating back to 2009, including the August 19, 2017, hailstorm, caused the damage to the property. Filing 47-3 at 5, 30–35.

Upon seeing that Kyle concluded that multiple hailstorms prior to August 19, 2017, contributed to the damage at the 45th Street property, Beaver emailed Ardoline asking about the coverage period for Timm's policy and how Ardoline would like him to proceed. Filing 177-7 at 1. Ardoline replied that the coverage period on Timm's policy was from February 1, 2017, to February 1, 2018, but did not provide further directives. Filing 177-7 at 1.

---

[3] After reviewing the report, Beaver emailed Ardoline asking if Timm had a renewed policy that would cover damage occurring on May 10, 2018, to which Ardoline responded affirmatively. Filing 177-5 at 1.

Following Kyle's reports, Beaver sent Ardoline follow-up reports incorporating Kyle's conclusions. Filing 165-4 at 5; Filing 165-8 at 1–6. In these follow-up reports, Beaver asked Ardoline how he would like Beaver to proceed. Filing 165-4 at 5; Filing 165-8 at 5. Later, on March 11, 2018, and March 12, 2018, Beaver provided subsequent reports to Ardoline for each of the properties and reiterated that he was waiting on further directions. Filing 165-5 at 1–4; Filing 165-9 at 1–3. Around this time, Beaver also sent emails to Ardoline asking for further instructions. Filing 177-8 at 1–3. Ardoline replied to these emails stating that he would provide instructions shortly. Filing 177-8 at 1–3. On April 8, 2018, Ardoline spoke with Beaver telling him that Timm's claims might be reassigned to another individual in Ardoline's department. Filing 165-6 at 1; Filing 165-10 at 1. After not hearing back from Ardoline for about a month, Beaver emailed Ardoline on May 7, 2019, asking for an update. Filing 177-9 at 1. Ardoline replied and told Beaver to close his files on Timm's claims; asked Beaver to send him the estimate for the claim on the 45th Street property and the contact information for engineer Kyle; and apologized to Beaver for the time it had taken to handle Timm's claims. Filing 177-9 at 1.

On May 28, 2019, Timm reached out to its insurance broker, the Mahoney Group (Mahoney), asking for help with resolving its insurance claims. Filing 175-11 at 7; Filing 177-13 at 13; Filing 190-1 at 12. A little over a month later, on June 5, 2019, Mahoney emailed Ardoline asking for an update. Filing 177-13 at 12. A series of emails between Mahoney, Ardoline, and Timm followed, in which Timm and Mahoney asked for updates, loss summaries, and the reports from engineer Kyle and independent adjuster Beaver. Filing 177-13 at 10–12. Eventually, on July 19, 2019, Ardoline sent an email to Timm and Mahoney explaining that the claim for the Avenue R property was being transferred to a different policy and that, after the transfer, Ardoline could allocate the damages and proceed towards issuing payments. Filing 177-13 at 10. Timm and

5

Mahoney responded, asking for Ardoline's documentation and a loss summary. Filing 177-13 at 9–10. Ardoline replied on July 19, 2019, apologizing for the delay in handling Timm's claims and stating that he would provide an update as soon as possible. Filing 177-13 at 9.

Timm and Mahoney continued to request documentation from Ardoline, who responded that the claim was proving difficult to resolve because of the number of buildings that are part of the Grandview Apartments and the several dates of loss that occurred outside the policy period. Filing 177-13 at 7–8. On August 21, 2019, Ardoline sent an email to Timm, Mahoney, and independent adjuster Beaver briefly explaining the status of Timm's claims. Filing 175-9 at 2–3. In the email, Ardoline stated that engineer Kyle noted that multiple storms had damaged the 45th Street property; asserted that only damage for the August 19, 2017, hailstorm would be covered; and asked Beaver to request an estimate from Kyle for damage caused by the August 19, 2017, hailstorm. Filing 175-9 at 2. Ardoline also outlined a loss estimate for some of the damaged buildings and attached a proof of loss for one of the buildings to the email. Filing 175-9 at 2–3. Timm and Mahoney continued to ask for additional documentation from Ardoline, who provided some information, such as the estimates from Beaver's reports, but not all of the documents requested by Timm and Mahoney. Filing 177-13 at 3–5. Although not entirely clear from the record, it appears Timm and Mahoney wanted a loss summary, an estimate from Beaver for some of the buildings at the Grandview Apartments, and engineer Kyle's reports, but did not receive these documents from Ardoline. Filing 177-13 at 2–3.

To assist with resolving its claims under its insurance policies, Timm retained Brown O'Haver Public Adjusters (Brown O'Haver) on August 1, 2019. Filing 177-14 at 1–2. Brown O'Haver inspected the roofs of the Grandview Apartments using Drone Tech Imaging and determined that the Replacement Cost Value of the storm damage to the 45th Street property was

$1,668,144.26 and the Replacement Cost Value to the Avenue R property was $1,044,200.35. Filing 177-16 at 22; Filing 177-17 at 15. Based on these estimates, Timm signed two Sworn Statements in Proof of Loss, which Brown O'Haver sent to Ardoline. Filing 49-1 at 1–2; Filing 177-13 at 2. On October 31, 2019, Ardoline rejected the Proofs of Loss because engineer Kyle had already inspected the properties and provided estimates. Filing 177-13 at 1. Ardoline contended that the photographs taken by the Drone Tech Imaging were insufficient to support the Proofs of Loss Brown O'Haver provided because there was no corresponding engineer's report stating when the damage occurred. Filing 177-20 at 1. When Brown O'Haver asked for engineer Kyle's reports, Ardoline said he could not send them per company policy. Filing 177-20 at 1.

Sometime around late 2019, AmGuard issued checks for the actual cash value of the loss to the Grandview Apartments. Filing 177-3 at 1; Filing 177-11 at 5. In October and December of 2020, Timm received several notices for unclaimed funds from AmGuard. Filing 177-12 at 1–12. According to Timm, Defendants made the checks payable to the wrong lender and the wrong Grandview entity. Filing 177-12 at 2. Defendants dispute that they made the checks payable to the wrong lender or entity. Filing 175-1 at 159–60, 176, 248; Filing 175-2 at 102, 135; Filing 185 at 14. In response to the unclaimed-funds notices, Timm requested that AmGuard reissue the checks. Filing 177-12 at 1–12. At some unspecified time later, Timm received the checks from AmGuard, although Timm says a check for the damage for one of the buildings has not been received. Filing 177-21 at 4–5. Timm claims that the figures contained in Beaver's estimates do not match the payment amounts of the checks Timm received. Filing 177-21 at 2–3; 5. Timm also claims that the checks they received did not explain for which property it was making payment. Filing 177-21 at 5; Filing 177-22 at 1. According to Timm, it could not determine why the checks were issued or the specific buildings to which the checks corresponded. Filing 177-21 at 5.

On December 16, 2019, Timm sued AmGuard and the Berkshire Hathaway Guard Insurance Companies in Nebraska state court. Filing 1-1 at 2. Defendants removed the case to this Court on May 27, 2020. Filing 1. On April 15, 2021, Timm filed its Second Amended Complaint, which dropped Berkshire Hathaway Guard Insurance Companies as a defendant and added WestGuard. Filing 65 at 1. In the Second Amended Complaint, Timm brings a breach-of-contract claim and a claim for breach of the implied covenant of good faith and fair dealing. Filing 65 at 11–14. In its breach-of-contract claim, Timm asserts that Defendants have refused to pay the full value of the damage to the Grandview Apartments. Filing 65 at 11. As to the claim for breach of the implied covenant of good faith and fair dealing, Timm alleges that Defendants had no reasonable basis for delaying and denying Timm benefits under its insurance policies. Filing 65 at 12. Timm further accuses Defendants of improperly relying on the reports from Beaver and Kyle, both of whom Timm claims inadequately investigated its claims and undervalued the damage to the Grandview Apartments. Filing 65 at 13.

On May 12, 2022, and May 15, 2022, Timm filed a Motion in Limine to Exclude or Limit the Testimony of Broc Beaver, a Motion in Limine to Exclude or Limit the Testimony of Kyle, and a Motion to Strike the Report of Gregory Quinn, a meteorologist from Rimkus. Filing 163; Filing 166; Filing 169. Both sides cross-moved for summary judgment on May 16, 2022. Filing 172; Filing 174.

### III.    ANALYSIS

### A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." *Id.*

Somewhat more specifically, the Eighth Circuit Court of Appeals has explained,

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidvits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)] (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the

"materiality" requirement slightly differently, "'[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment.'" *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle*

*Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson*, 477 U.S. at 248).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make

credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v.*

*Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real*

*Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court

must view the evidence in the light most favorable to the non-moving party and afford that party

all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann*

*Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, ___, 2022 WL 1559586, at *2 (8th Cir. 2022)

(pagination not yet available); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party

bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601,

9

603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, "'[t]he movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042).

The burden on the resisting party is as follows:

> The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).
>
> Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2007) ("*3234 Washington*"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial." *Id.* at 845 (quotations omitted); *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845.

*Erickson*, 31 F.4th at 1048. Thus, "'[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)).

### B. Breach of Contract Claim

The Court first addresses the parties' cross-motions for summary judgment on Timm's breach-of-contract claim. Defendants make several arguments that summary judgment on Timm's

breach-of-contract claim is warranted. First, Defendants point out that WestGuard is not a party to the insurance contracts and, therefore, Timm cannot pursue a breach-of-contract claim against it. Filing 173 at 16–17. Second, Defendants argue that Timm is contractually barred from suing because Timm failed to provide "prompt notice" of its damages or "cooperate" in the investigation of its claims as required by the insurance policies. Filing 173 at 17–27. Third, Defendants assert that the doctrine of laches precludes Timm from pursuing a breach-of-contract claim. Filing 173 at 26 n.13. Finally, Defendants argue that Timm's breach-of-contract claim fails because it is not possible for Timm to prove its damages. Filing 173 at 28–41. Timm responds that it may hold WestGuard liable for breach of contract under a piercing-the-corporate-veil theory of liability; waiver and estoppel prevent Defendants from arguing that Timm is contractually barred from suing; and that Defendants have breached the insurance policies by failing "to properly pay [Timm] for all owed undisputed funds under the insurance policies." Filing 176 at 12; Filing 189 at 22–42. The Court addresses each of Defendants' arguments in turn and concludes that Timm's breach-of-contract claim may proceed to trial against AmGuard but that WestGuard is entitled to summary judgment. Therefore, as to Timm's breach-of-contract claim, Defendants' Motion for Summary Judgment is granted in part and denied in part and Timm's Motion for Summary Judgment is denied.

    *1.  WestGuard*

    The Court begins with Defendants' argument that WestGuard cannot be held liable for breach of contract because it is not a party to either of Timm's insurance policies. Timm responds that WestGuard may be held liable for breach of contract because AmGuard, a signatory to Timm's insurance policies, is its alter ego. In other words, Timm seeks application of the piercing-the-corporate-veil doctrine to hold WestGuard liable for breach-of-contract. The Court agrees with

Defendants that WestGuard cannot be held liable and grants it summary judgment on Timm's breach-of-contract claim.

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). A court will preserve a corporation's identity as a separate legal entity "until sufficient reason to the contrary appears." *Howsden v. Roper's Real Est. Co.*, 805 N.W.2d 640, 645 (Neb. 2011). The fact that one company is a wholly owned subsidiary of the other company, that the two companies share services, or that the companies have interlocking directors, is insufficient. *See Glob. Credit Servs., Inc. v. AMISUB (Saint Joseph Hosp.), Inc.*, 508 N.W.2d 836, 842–44 (Neb. 1993). Instead, the party seeking to pierce the corporate veil must show that one company "totally dominated" the other to such an extent that the subservient company "had no separate corporate existence and functioned solely to achieve the purposes of the dominant corporation." *Id.* at 843. Even if this showing is made, however, the corporate form is not disregarded unless "the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest [or] unjust act in contravention of the rights of another." *Howsden*, 805 N.W.2d at 645 (quoting *Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008)).

Timm has pointed to several facts to support its argument that AmGuard is merely an alter ego of WestGuard, including that AmGuard is a wholly owned subsidiary of WestGuard; AmGuard has no employees; and WestGuard employees provide claim handling services on AmGuard's behalf. Filing 106-9 at a; Filing 189 at 23–24; Filing 190-16 at 3–6. Timm has not explained, however, why disregarding AmGuard's separate corporate form is necessary to prevent fraud, the violation of a legal duty, or the perpetration of a dishonest or unjust act. *See Howsden*, 805 N.W.2d at 645. Nothing in the record implies that WestGuard is using AmGuard to shield

itself from liability or that any injustice will result from maintaining AmGuard's separate corporate existence. *Cf. Hayes v. Sanitary & Imp. Dist. No. 194 of Douglas Cnty.*, 244 N.W.2d 505, 512 (Neb. 1976) ("The fiction of separate corporate identity of two corporations will not be extended to permit one of the corporations to evade its just obligations or to promote fraud or illegality or injustice." (citing 18 Am. Jur. 2d *Corporations* § 17)). In fact, WestGuard has an agreement with AmGuard whereby it will indemnify AmGuard against liability arising from WestGuard's claim handling services. Filing 106-9 at 2. Moreover, Timm has not provided any reason why a remedy against AmGuard would be inadequate to satisfy its claim, such that injustice would result if the Court declined piercing the corporate veil.

WestGuard is not a party to Timm's insurance policies and cannot be held liable for their breach. Accordingly, the Court grants WestGuard summary judgment on Timm's breach-of-contract claim.

### 2. AmGuard

In its first argument against Timm's breach-of-contract claim, AmGuard argues that Timm is contractually barred from bringing a lawsuit. AmGuard highlights that the insurance policies it issued to Timm prevent Timm from bringing a legal action against AmGuard unless Timm is in "full compliance with all of the terms of [the insurance policies]." Filing 175-1 at 87; Filing 175-2 at 99. According to AmGuard, Timm violated two provisions in the insurance policies: that Timm provide AmGuard with "prompt notice of the loss or damage" and that Timm "[c]ooperate with [AmGuard] in the investigation or settlement of [Timm's] claim[s]." Filing 175-1 at 86; Filing 175-2 at 99. AmGuard emphasizes that Timm waited over a year to report its hail-damage claim and did not provide documents requested by Engle Martin during the investigation of its claims.

Filing 175-8 at 2; Filing 175-14 at 6–7. Therefore, AmGuard contends, Timm is not in "full compliance" with the terms of the insurance policies and cannot bring suit.

Nebraska law governs this contract dispute. *See Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595 (8th Cir. 2007) ("In diversity cases, we apply substantive state law."). "[I]t is well-settled Nebraska law that an insurance policy is a contract between the insurer and the insured, whose respective rights and obligations must be determined by application of contract principles." *Volquardson v. Hartford Ins. Co.*, 647 N.W.2d 599, 606 (Neb. 2002) (alteration in original). "Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute." *Mefferd v. Sieler & Co.*, 676 N.W.2d 22, 25 (Neb. 2004).

The present issue is whether applying the notice and cooperation provisions in the insurance policies bars Timm's suit. The Nebraska Supreme Court refers to post-loss conditions, such as abiding by notice and cooperation provisions, as "conditions subsequent." *See D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 16 (Neb. 2010). When an insured fails to comply with a notice or cooperation provision, the insurer may avoid liability. *Id.* at 16–17 ("[A]fter a loss has occurred, an insured's failure to comply with a notice of loss provision may result in the insurer's avoidance of liability . . . ."). Conditions subsequent "are matters of defense to be pleaded and proved by [the] insurer." *Id.* at 10 (quoting 6 Lee R. Russ & Thomas F. Segalla, Couch on Ins., § 81:19 (3d ed. 2006)). The Court addresses the violations of the cooperation provisions and the notice provisions in turn.

a.  Violation of the Cooperation Provisions

The Court first addresses whether Timm violated the cooperation provisions in its insurance policies. These provisions required Timm to "cooperate with [AmGuard] in the investigation or settlement of the claim." Filing 175-1 at 86; Filing 175-2 at 98. According to AmGuard, Timm breached the cooperation provisions by failing to provide Beaver, the independent adjuster, with photos of the damage, estimates from Timms' roofer, and other supporting information in Timm's possession. Filing 173 at 11, 27. Timm disputes that it failed to cooperate with the investigation of its claim, pointing out that it communicated with Beaver via telephone, permitted Beaver and Kyle, the engineer, to inspect the Grandview Apartments, and made its roofer available to Beaver during Beaver's inspection. Filing 165-3 at 2; Filing 165-7 at 2; Filing 189 at 9–10.  Timm also points out that its roofer did not complete his estimates for the hail damage until September of 2019 and, therefore, Timm could not provide AmGuard with the estimates until then. Filing 190-10 at 31–55.

A court interprets an insurance policy as a matter of law. *See State Farm Fire & Cas. Co. v. TFG Enterprises, LLC*, 954 N.W.2d 899, 903 (Neb. 2021). "[A] court interpreting a contract, such as an insurance policy, must first determine . . . whether the contract is ambiguous." *Hillabrand v. Am. Fam. Mut. Ins. Co.*, 713 N.W.2d 494, 498 (Neb. 2006). When the insurance policy's terms are clear, "a court gives them their plain and ordinary meaning as a reasonable person in the insured's position would understand them." *TFG Enterprises*, 954 N.W.2d at 904. In contrast, ambiguity arises "when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Id.*

Cooperation provisions help "ensure that an insurer has an opportunity to protect its interests." *Rent-A-Roofer, Inc. v. Farm Bureau Prop. & Cas. Ins. Co.*, 869 N.W.2d 99, 106 (Neb.

15

2015). The burden of proving noncooperation lies with the insurer. *See Iowa Mut. Ins. Co. of De Witt, Iowa v. Meckna*, 144 N.W.2d 73, 80 (Neb. 1966). Unfortunately, "[t]here is little case law in Nebraska regarding a failure to comply with a cooperation provision where an insured is seeking recovery from the insured's insurance company for his or her own loss." *Saif v. Atl. States Ins. Co.*, 955 N.W.2d 6, 15 (Neb. Ct. App. 2021). Thus, it is not altogether clear what showing the insurer must make under Nebraska law to prove that the insured violated a cooperation provision when the insured does not provide requested information to an insurer.

In *Oriental Trading Company, Inc., v. American Safety Indemnity Company*, a case in which Nebraska law governed, the District of Nebraska observed that the courts of other states describe the insurer's burden in this context "as a heavy one that requires a showing of willful and avowed obstruction with no reasonable excuse." No. 8:08CV327, 2010 WL 11694443, at *12 (D. Neb. July 2, 2010) (citing *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 373 (S.D.N.Y. 2009), and *Minichello v. N. Assur. Co. of Am.*, 304 A.D.2d 731, 732, 758 N.Y.S.2d 669, 670 (2003)); *see also* 16 Williston on Contracts, § 49:108 (4th ed. 2022) (analyzing cases concerning proving noncooperation and stating that the insurer has a "heavy burden" to show that that the insured deliberately failed to cooperate). On the other hand, some jurisdictions require a somewhat lesser showing that the insurer exercised reasonable diligence in obtaining the insured's compliance and that the breach committed by the insured was material and prejudicial. *See e.g.*, *McClune v. Farmers Ins. Co., Inc.*, 12 F.4th 845, 849 (8th Cir. 2021) (outlining that, under Missouri law, an insurer must prove a material breach of the cooperation provision, substantial prejudice from the breach, and that the insurer was reasonably diligent in obtaining the insured's cooperation); *McCartney v. Shelter Mut. Ins. Co.*, 255 So. 3d 1060, 1062 (La. Ct. App. 2018) (under Louisiana law, an insurer must show it made a

diligent effort to obtain the information from the insured and that the breach was material and prejudicial); *Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.*, 860 F. Supp. 1514, 1518 (M.D. Fla. 1993) (under Florida law, an insurer must show that it used due diligence and good faith in obtaining insured's cooperation and that the breach was material and caused substantial prejudice); *see also* 14 Steven Plitt et al., Couch on Ins. § 199:12 (3d ed. 2022) (collecting cases).

The Nebraska Supreme Court has not expressly outlined what showing an insurer must make to show noncompliance with a cooperation provision in a case in which the insured did not provide requested information to an insurer. But the Court believes that, in a case such as this one, the Nebraska Supreme Court would join those jurisdictions that require an insurer to show it exercised reasonable diligence in ensuring the insured's cooperation and that the breach was material and prejudicial. *See Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) ("When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." (quoting *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006))). First, many of the jurisdictions that require the insurer to prove that the insured willfully breached a cooperation provision have done so in the context of liability insurance. *See, e.g.*, *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 6 N.E.3d 578, 582 (N.Y. 2014) (requiring that the insured intentionally and willfully failed to cooperate under a liability insurance policy); *Bowyer by Bowyer v. Thomas*, 423 S.E.2d 906, 911 (W. Va. 1992) (breach of a cooperation provision of an automobile liability insurance policy must be intentional and willful); *Smithers v. Mettert*, 513 N.E.2d 660, 662 (Ind. Ct. App. 1987) (same). Placing a more rigorous showing on the insurer when liability insurance is at issue serves the important purpose of ensuring that innocent victims can be fully compensated for their injuries. *See Country-Wide*, 6 N.E.3d at 582 (stating that the higher showing "is intended to facilitate the

full compensation of injured victims suing for damages"); *Bowyer by Bowyer*, 423 S.E.2d at 911 ("From a practical standpoint, allowing an insurance company to easily deny coverage to an insured because of insubstantial failures to cooperate would unduly expose innocent injured members of the public to financial ruin and provide an unjustifiable windfall to the prejudiced insurer."). The present case involves property insurance policies, which only affect the insurer and the insured, so they do not present the same concerns as liability insurance policies.

Moreover, the Nebraska Supreme Court in *Wright v. Farmers Mutual of Nebraska* considered whether an insured had breached a cooperation provision and declined to address whether the insured "intentionally misrepresented or concealed information when she obtained her policies." 669 N.W.2d 462, 467 (Neb. 2003). Instead, the Court focused primarily on the materiality of the information withheld from the insurer. *See id.* at 466 ("[W]e hold that the failure to provide *material* information under a clause requiring the insured to submit to an examination under oath is a material breach of the contract." (emphasis added)). Furthermore, the Nebraska Supreme Court has steadfastly held that, when an insurer accuses the insured of breaching a cooperation provision, the insurer must explain how it has been prejudiced. *See, e.g.*, *Mefferd*, 676 N.W.2d at 26 ("[A]n insurer cannot assert a breach of a policy's notice and cooperation provision as a policy defense in the absence of a showing of prejudice or detriment to the insurer."); *Wright*, 669 N.W.2d at 466 (holding that an insurer must show prejudice when raising breach of a cooperation provision as a defense); *MFA Mut. Ins. Co. v. Sailors*, 141 N.W.2d 846, 849 (Neb. 1966) ("Where there is no evidence of collusion between the injured and the insured and it is not shown that the insurer has been prejudiced in its handling of the claim, we think the better rule is that the breach of the policy is not a defense.").

18

Finally, the Nebraska Court of Appeals in a recent case, involving whether an insured breached a cooperation provision by not supplying requested information, noted that the insurer "was not reasonably diligent in securing [the insured's] cooperation . . . ." *See Saif*, 955 N.W.2d at 18. Therefore, this Court predicts that the Nebraska Supreme Court would join those jurisdictions that require an insurer to show reasonable diligence in obtaining the requested information and that the information withheld was material and prejudicial.

Having determined what AmGuard must show to raise noncompliance with a cooperation provision as a defense, the Court concludes that AmGuard has failed to offer any evidence that Timm withheld requested information. Although Beaver, the independent adjuster, did make generalized requests for documents from Timm, such as "all claim related documents" and "any photos pertinent to the loss," Filing 175-18 at 2, AmGuard has not explained what Timm had in its possession that it failed to turn over. AmGuard has not shown that Timm had "claim related documents" or "photos pertinent to the loss" that it failed to provide to AmGuard. *Mensie*, 917 F.3d at 688 ("The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" (alterations in original) (quoting *Torgerson*, 643 F.3d at 1042)). Moreover, as Timm correctly points out, it could not give AmGuard an estimate from its roofer until September of 2019 because Timm's roofer did not finish the estimate until then. Filing 190-10 at 31–35. While AmGuard vaguely references an email from Timm's roofer that Timm failed to provide, Filing 173 at 27, it does not point the Court to that email, why it is relevant, or how the failure to provide it prejudiced it. Indeed, AmGuard completely fails to explain how Timm prejudiced it by allegedly failing to turn over requested information. Accordingly, AmGuard has failed to meet its burden on summary judgment to show that there is no genuine

dispute of material fact that Timm violated the cooperation provisions and that it was prejudiced. *See Mensie*, 917 F.3d at 688. Therefore, the Court will not grant AmGuard summary judgment on Timm's breach-of-contract claim under the theory that Timm materially breached the cooperation provisions.

   b. Violation of the Notice Provisions

  As an alternative basis for summary judgment on Timm's breach-of-contract claim, AmGuard asserts that Timm breached the notice provisions of the insurance policies. Each policy required Timm to provide AmGaurd with "prompt notice of the loss or damage." Filing 175-1 at 86; Filing 175-2 at 98. AmGuard asserts that Timm violated the notice provisions in its insurance policies by waiting over a year to report its damages.

  Timm has not argued that it provided AmGuard with "prompt" notice of its loss as required by its policies' notice provisions, and the Court concludes, as a matter of law, that Timm's notice of its loss was not prompt. Although the policies do not define the meaning of "prompt," "[t]here is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous." *Henn v. Am. Fam. Mut. Ins. Co.*, 894 N.W.2d 179, 184 (Neb. 2017). The word "prompt" in insurance policies has "generally been construed to mean within a reasonable time under the circumstances of the case." 13 Steven Plitt et al., Couch on Ins., § 190:32 (3d ed. 2022). Similarly, the Nebraska Supreme Court has held that the word "immediate" in a notice provision required the insured to provide notice "with reasonable celerity, with reasonable and proper diligence, and what is a reasonable time depends upon all the facts and circumstances of each particular case." *Zukaitis v. Aetna Cas. & Sur. Co.*, 236 N.W.2d 819, 820 (Neb. 1975) (quoting *George v. Aetna Cas. & Sur. Co.*, 238 N.W. 36, 38 (Neb. 1931). Therefore, the notice

provisions in Timm's policies are not ambiguous and required Timm to provide AmGuard with notice within a reasonable time depending on the facts and circumstances.

Having concluded that the notice provisions required Timm to provide notice within a reasonable time, the Court has little difficulty finding that Timm did not provide prompt notice. The undisputed facts show that Timm was aware of the hail damage to the Grandview Apartments in August of 2017 but did not report the hail damage to AmGuard until September 28, 2018. Filing 41-1 at 1; Filing 175-12 at 31. Reporting damage thirteen months after discovering it is not within a reasonable time. *See Herman Bros. v. Great W. Cas. Co.*, 582 N.W.2d 328, 334 (Neb. 1998) (concluding that the plaintiff, who waited eighteen months to report its claim, did not give timely notice); *Ach v. Farmers Mut. Ins. Co. of Neb.*, 215 N.W.2d 518, 519–20 (Neb. 1974) (holding that the trial court's factual determination that a five-month delay in providing notice after discovering the loss was untimely "was not clearly wrong"). Indeed, Timm does not even argue that it provided notice promptly as required by its insurance policies. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) ("The 'failure to oppose a basis for summary judgment constitutes waiver of that argument' . . . ." (quoting Satcher v. *Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009))). No reasonable jury could find that Timm complied with the notice provisions of its insurance policies and, therefore, the Court concludes as a matter of law that Timm violated the notice provisions. *See Smith v. Basin Park Hotel, Inc.*, 350 F.3d 810, 813 (8th Cir. 2003) ("Summary judgment is to be granted . . . where the evidence is such that no reasonable jury could return a verdict for the non-moving party."); *cf. Siouxland Ethanol, LLC v. Sebade Bros., LLC*, 859 N.W.2d 586, 592 (Neb. 2015) (acknowledging that, under Nebraska law, whether a material breach of a contract has occurred may, in some circumstances, be determined as a matter of law).

Timm failing to provide prompt notice does not end the matter, however. The Nebraska Supreme Court has long held that "an insurer cannot assert a breach of a policy's notice . . . provision as a policy defense in the absence of a showing of prejudice or detriment to the insurer." *Mefferd*, 676 N.W.2d at 26. Although this prejudice requirement ordinarily applies in the context of liability insurance claims, *see Herman Bros.*, 582 N.W.2d at 334 (noting that under Nebraska law liability insurers must show prejudice when asserting a breach of a notice provision), the Nebraska Supreme Court has applied this rule in a case involving property insurance policies like the policies at issue here. *See Wright*, 669 N.W.2d at 466 (requiring a property insurer to show that a breach prejudiced the insurer).

Initially, AmGuard disputes that the law requires it to show prejudice in this case because it is not just raising a breach of the notice provisions as a defense. Instead, AmGuard emphasizes, it is seeking enforcement of the "no action" provisions of Timm's insurance policies that forbid Timm from suing unless Timm is in "full compliance" with the terms of the insurance policies, which, according to AmGuard, does not require a showing of prejudice. Filing 173 at 20. The Court disagrees with AmGuard that this distinction matters. At bottom, AmGuard's defense relies on a breach of the notice provisions which, as expressed in Nebraska caselaw, requires AmGuard to show prejudice. Indeed, the insurance policy at issue in the Nebraska Supreme Court case *Deprez v. Continental Western Insurance Company* contained the same "no action" provision as the ones in this case. *See* 584 N.W.2d 805, 808 (Neb. 1998). Nevertheless, the Nebraska Supreme Court analyzed whether the insured's lack of compliance with the terms of his insurance policy prejudiced the insurer. *See id.* at 809 (noting, despite the "no action" provision in the insurance policy, that the "[f]ailure to give timely notice is not a defense to an insurance claim unless . . . it is shown that the insurer has been prejudiced in its handling of the claim"); *see also Wright*, 669

22

N.W.2d at 466 (analyzing prejudice despite clause requiring insured to be in "compliance with the policy provisions"). Thus, AmGuard is required to show that Timm's failure to give "prompt" notice of its claims prejudiced it.

In the insurance context, the prejudice requirement is grounded in the rule that a party's performance under the insurance policy is excused only when the other party's breach is material. *See Rent-A-Roofer*, 869 N.W.2d at 105 (noting that violating a notice provision is "a material breach of the insurance contract" when it prejudices the insurer's ability to investigate or process a claim); *Siouxland Ethanol*, 859 N.W.2d at 592 ("A material breach will excuse the nonbreaching party from its performance of the contract."). Broadly speaking, "Prejudice is determined by examining whether the insurer received notice in time to meaningfully protect its interests." *Rent-A-Roofer*, 869 N.W.2d at 105. "The mere passage of time generally does not establish prejudice to the insurer." *Id.* Instead, the failure to give timely notice of a loss is prejudicial when it prejudices "the insurer's opportunity to make an investigation or enable it to process a claim." *Id.* Critical to this issue is whether "the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid." *Saif*, 955 N.W.2d at 15; *cf. Keene Co-op. Grain & Supply Co. v. Farmers Union Indus. Mut. Ins. Co.*, 128 N.W.2d 773, 777 (Neb. 1964) (holding that notice of loss provisions require that "reasonable information be given to the insurance company so that it can form some estimate of its rights and duties before it is obliged to pay a loss").

AmGuard argues that Timm's thirteen-month delay in providing notice prejudiced it because the delay made it impossible to date the age of the hail damage to the Grandview Apartments. AmGuard points out that both Kyle, the engineer, and Gregory Kaszas, Timm's expert, agree that age-dating hail damage becomes unfeasible a year after a hailstorm. Filing 175-16 at 19–22; Filing 175-18 at 19–20. Without knowing the age of the hail damage, AmGuard

asserts, it is impossible to know if the hail damage occurred during the coverage periods of Timm's policies and, therefore, whether Timm has a valid claim. In response, Timm disputes that its delay made it impossible to determine when the hail damage occurred. Timm further argues that AmGuard cannot show prejudice when, instead of denying the claim, AmGuard accepted liability and issued payment for the hail damage.

Given that whether an insurer has suffered prejudice by the insured's breach of a notice provision is usually a question of fact, *see Saif*, 955 N.W.2d at 14, the Court concludes that Timm has provided sufficient evidence to create a genuine dispute of material fact over whether AmGuard was prejudiced. Although Kyle, the engineer, stated that he could not differentiate between hail damage caused by the August 19, 2017, storm or a prior storm, Filing 175-18 at 14–16; Filing 184-9 at 34, Timm's expert, Kaszas, wrote in his report that he could conclude that the August 19, 2017, storm caused the hail damage. Filing 182-9 at 33, 38; Filing 184-8 at 31, 35. According to Kaszas, the size of the dents on the Grandview Apartments was consistent with the size of the hail that fell on August 19, 2017. Filing 182-9 at 33, 38; Filing 184-8 at 31, 35. Kaszas explained that he could rule out prior storms because he did not see any hail impacts on the Grandview Apartments as large as the size of the hail from those storms. Filing 190-6 at 7. AmGuard has not pointed to anything in the record showing that Kyle could not employ the same method that Kaszas did when he inspected the Grandview Apartments. *Glover*, 31 F.4th at 603 ("The moving party bears the burden of showing the absence of a genuine dispute."). Construing the facts in the light most favorable to Timm, the Court concludes that there is a genuine dispute of material fact on whether Timm's failure to provide prompt notice of its claim prejudiced AmGuard. *See Edwards v. Byrd*, 750 F.3d 728, 731 (8th Cir. 2014) (outlining that, when considering a summary judgment motion, a court "view[es] the evidence in the light most

favorable to the non-moving party and giv[es] that party the benefit of all reasonable inferences");
*Schilf*, 687 F.3d at 951 (holding that summary judgment should have been denied when there were
genuine issues of material fact).

Moreover, AmGuard's reliance on Kaszas admitting that age-dating hail damage is
unfeasible a year after a hailstorm is unavailing. Kaszas's statement was in reference to whether a
hail dent, viewed in isolation, would have enough discoloration to properly date it. Filing 175-16
at 51 ("For hail dings on asphalt surfaces, unless you see a bright black, you would not be able to
age-date the hail."). This statement has nothing to do with whether Kaszas was able to determine
that the August 19, 2017, storm caused the hail damage based on the size of the hail that fell
compared to the dents he observed on the Grandview Apartments. Therefore, while both parties
agree that it would be impossible to age-date the hail damage to the Grandview Apartments based
upon discoloration, there is a genuine disagreement on whether it is possible to attribute the
damage to the August 19, 2017, storm by comparing the size of the dents with the size of the hail
from prior hailstorms. It is a question for a jury to decide whether AmGuard could have conducted
a reasonable investigation and determined the validity of Timm's claims based on the method used
by Kaszas. *See Erickson*, 31 F.4th at 1048 ("An issue is genuine if the evidence is sufficient to
persuade a reasonable jury to return a verdict for the nonmoving party." (quoting *Schilf*, 687 F.3d
at 948)). Accordingly, the Court cannot grant AmGuard summary judgment because a genuine
dispute over whether it was prejudiced exists.[4]

---

[4] In a footnote, AmGuard also argues that the doctrine of laches precludes Timm's lawsuit. Filing 173 at 26. "Under
equitable principles, courts of equity have inherent power to refuse relief after an inexcusable delay when not to do so
would work an injustice." *Merz v. Seeba*, 710 N.W.2d 91, 95 (Neb. 2006). "The defense of laches is not favored in
Nebraska," *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 865 N.W.2d 105, 115 (Neb. 2015), and "must be founded
upon the inequity of permitting a claim to be enforced . . . .". *Hanthorn v. Hanthorn*, 460 N.W.2d 650, 654 (Neb.
1990). AmGuard has not shown that Timm inexcusably delayed bringing its claim or that it would be inequitable to
enforce Timm's claim. Accordingly, the Court rejects AmGuard's attempt to raise the defense of laches.

c.   Waiver

In response to AmGuard's Motion for Summary Judgment, Timm seeks to remove the prompt notice issue from this case by relying on the doctrine of waiver. According to Timm, even if it failed to provide prompt notice and thereby prejudiced AmGaurd, AmGuard waived enforcement of the notice provisions by issuing payment on Timm's claims. Because the Court has determined that Timm did indisputably fail to provide prompt notice and that there is a genuine dispute of material fact on whether AmGuard was prejudiced, it must address whether AmGuard waived Timm's noncompliance. The Court concludes that no reasonable jury could find that AmGuard did not waive Timm's noncompliance with the notice provisions of its policies.

As provisions made for AmGuard's benefit, the notice provisions of Timm's insurance policies are subject to waiver. *See Stauffer v. Benson*, 850 N.W.2d 759 (Neb. 2014) ("[A] party to a contract may waive the provisions made for his or her benefit."); *Keene Co-op.*, 128 N.W.2d at 777 (holding that a notice provision in a fire insurance policy was subject to waiver). "A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *D & S Realty,* 789 N.W.2d at 17. The Nebraska Supreme Court has explained the showing required to prove waiver as follows:

> Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. A party may waive a written contract in whole or in part, either directly or inferentially. A party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive.

*Eagle Partners, L.L.C. v. Rook*, 921 N.W.2d 98, 108 (Neb. 2018) (internal footnotes omitted). Usually, whether a waiver may be implied from the acts or conduct of a party is a question of fact, *see Siouxland Ethanol*, 859 N.W.2d at 591, although it may be decided as a matter of law "if a jury could reach only one reasonable conclusion on the issue." *Jamison v. Depositors Ins. Co.*, No.

4:14-CV-3009, 2016 WL 3541391, at *9 (D. Neb. May 23, 2016) (citing *Torgerson*, 643 F.3d at 1042); *see also* 17B C.J.S. *Contracts* § 1042 ("If the evidence permits of only one reasonable conclusion, the question [of waiver] is one of law."); *cf. Siouxland Ethanol*, 859 N.W.2d at 591 ("Although whether a material breach has occurred is commonly a fact question, in some circumstances, a court may determine the question as a matter of law.").

Timm argues that, even if it breached the notice provisions of its insurance policies, AmGuard waived Timm's noncompliance by issuing payment on Timm's claims despite the alleged breach. Filing 189 at 28–35. According to Timm, AmGuard was aware at the time Timm filed its claims that the hail damage had occurred thirteen months earlier and even considered rejecting the claims on that basis. Filing 189 at 28, 31; *see also* Filing 190-12 at 1; Filing 190-13 at 1. Nevertheless, Timm argues, AmGuard did not reject Timm's claims because of the late notice and instead sent checks for the damage to the Grandview Apartments. Filing 189 at 33, 35. By doing so, Timm asserts, AmGuard has waived Timm's alleged breach of the notice provisions.

The Court agrees with Timm that AmGuard issuing payment for the damages despite considering denying Timm's claims for noncompliance with the notice provisions constitutes "a voluntary and intentional relinquishment" of AmGuard's right to prompt notice under the policies. *D & S Realty*, 789 N.W.2d at 17. Such conduct amounts to an "express declaration[] manifesting the intent not to claim an advantage" by using Timm's noncompliance with the notice provisions to decline coverage. *Eagle Partners*, 921 N.W.2d at 108. AmGuard's claims adjuster, Ardoline, twice noted in internal emails with fellow employees that he was considering denying Timm's claims on the basis of Timm providing late notice, Filing 190-12 at 1; Filing 190-13 at 1, yet ultimately decided to issue checks to pay for the claimed damages. By voluntarily agreeing to pay for the claim, AmGuard took actions inconsistent with its rights under the insurance policies. *Cf.*

27

*D & S Realty*, 789 N.W.2d at 18–19 ("The insurer's acceptance of premiums is inconsistent with treating the breach as voiding the policy."). Accordingly, the Court finds that no reasonable jury could conclude that AmGuard has not waived Timm's noncompliance with the notice provisions. AmGuard, therefore, cannot raise Timm's noncompliance as a defense to this action.

AmGuard attempts to sidestep this result by pointing out that Timm's insurance policies include "no action" provisions that prohibited Timm from suing AmGuard unless Timm was in "full compliance with all of the terms" of the insurance policies. Filing 175-1 at 86; Filing 175-2 at 99; Filing 200 at 6–7. AmGuard stresses that it seeks enforcement of those provisions, not just the notice provisions, and that there is no evidence that it ever waived enforcement of the "no action" provisions. Filing 200 at 6–7.

While it is true that "[a] party may waive a written contract . . . in part," *see Eagle Partners*, 921 N.W.2d at 108, the Court concludes that AmGuard may not rely on the "no action" provisions in Timm's policies as a defense to this action separate from the notice provisions. AmGuard's reliance on the "no action" provisions is entirely derivative of enforcing the notice provisions against Timm. The Court has already concluded that AmGuard waived Timm's noncompliance with the notice provisions by issuing payment for the claimed damages. AmGuard provides no reason why its waiver of Timm's noncompliance does not apply with equal force to the "no action" provisions.

AmGuard also asserts that the Nebraska Supreme Court case *D & S Realty, Inc. v. Markel Insurance Company* directly supports its position. Filing 200 at 5. The Court finds AmGuard's reliance on *D & S Realty* to be misplaced. In *D & S Realty*, the Nebraska Supreme Court considered whether the insurer waived compliance with an "increased hazard provision" when the insurer continued to accept premiums despite knowing that the insured was in breach of that provision.

789 N.W.2d at 17–19. The court noted that "[w]hen an insurer knows of a breach that permits it to treat the policy as void, and the insurer continues to accept premiums, its conduct shows its intent to treat the policy as valid despite the breach." *Id.* at 18. The court explained that accepting premiums was "inconsistent with treating the breach as voiding the policy." *Id.* Nevertheless, the court held, if a breach does not render a policy void, and the insurer could still be liable for other losses under the policy, then accepting premiums does not constitute a waiver. *Id.* at 19 ("But waiver does not apply when the insured's breach of an increased hazard provision does not result in an absolute forfeiture of the policy and the insurer continues to be liable for loss from other covered causes."). It then concluded that, in the case before it, the insurer's acceptance of premiums did not constitute a waiver of its defense of the insured's breach of the policy because the insurer "was liable for any other covered losses." *Id.*

The Court fails to see how the result in *D & S Realty* governs the issue in this case. In the present case, AmGuard acted inconsistent with its rights to enforce the notice provisions of Timm's insurance policies by issuing payments. By doing so, it waived Timm's noncompliance. Unlike in *D & S Realty*, where the insurer's acceptance of premiums was not contrary to its rights under the policy because it still remained liable, AmGuard issuing payment directly conflicts with its right to assert Timm's noncompliance with the notice provisions as a basis to refuse coverage. Accordingly, even if a jury could find that AmGuard was prejudiced by Timm failing to provide prompt notice of its loss as required by the insurance policies, the Court concludes that AmGuard has waived raising Timm's noncompliance with the notice provisions as a defense to this action.[5]

---

[5] Timm also asserts that AmGuard is estopped from denying liability. Filing 189. The Court disagrees. An estoppel argument in this context requires that "by its course of dealing and the acts of its agent, [the insurance company] has induced the insured to pursue a course of action to his detriment." *Keene Co-op.*, 128 N.W.2d at 777. Timm has not pointed to any evidence that by issuing payment or by other acts AmGuard caused Timm to act to its detriment.

d.  Proving Damages

Finally, AmGuard seeks summary judgment on Timm's breach-of-contract claim by arguing that Timm cannot prove its damages. Filing 173 at 28–41. Essentially rehashing its argument that it was prejudiced by Timm's late notice of its damages, AmGuard contends that Timm is unable to prove that the hail damage occurred during the coverage periods for both polices. For the same reasons that the Court concluded that there is a genuine dispute of material fact as to whether Timm's late notice prejudiced AmGuard, the Court finds that there is a genuine dispute of material fact as to whether the hail damage occurred during the policies' coverage periods. Although both Kyle, AmGuard's expert, and Kaszas, Timm's experts, seem to agree that age-dating hail damage based upon discoloration is unfeasible after a year, Kaszas opined that he could attribute the hail damage to the August 19, 2017, storm based upon the size of the dents he observed. Kyle, of course, disagrees, but resolving contrasting expert opinions is not within this Court's province. Rather, conflicting expert opinions present a question for a jury. *See Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 808 (8th Cir. 2017) (describing contrasting expert opinion testimony as "a classic example of conflicting evidence that must be weighed and decided by a jury, not a court").[6]

In summary, the Court concludes that AmGuard has no presented evidence from which a reasonable jury could find that Timm failed to cooperate with the investigation or settlement of its claim, and that there is a genuine dispute of material fact about whether Timm's late notice prejudiced AmGuard. Ultimately, however, whether AmGuard suffered prejudice is irrelevant,

---

[6] In its Motion for Summary Judgment, Timm argues that AmGuard has "failed to properly pay [Timm] all owed undisputed funds under the insurance policies," and, therefore, is in breach. Filing 176 at 12. As explained above, however, the amount of Timm's damages and whether Timm suffered damages during the coverage periods of its policies is disputed. Because there is a genuine dispute of material fact on this issue, the Court must deny Timm summary judgment on its breach-of-contract claim as well.

because AmGuard waived any noncompliance with the notice provisions by issuing payment for Timm's claims. Finally, there is a genuine dispute of material fact on whether Timm can prove that the hail damage occurred during its policies' coverage periods. Therefore, the Court denies AmGuard's Motion for Summary Judgment on Timm's breach-of-contract claim.

### C.  Breach of the Covenant of Good Faith and Fair Dealing Claim

In its claim for breach of the covenant of good faith and fair dealing, Timm launches a litany of complaints against Defendants for the manner in which they handled its claims. These complaints include Defendants issuing payments without explaining for what buildings and under what policy the payments were made; Defendants refusing to consider the estimates from Timm's public adjuster; and Defendants' delay in handling Timm's claims. Filing 176 at 14–32. Defendants first respond that WestGuard is not a signatory to Timm's insurance policies, so it cannot be held liable for breaching the covenant of good faith and fair dealing. Filing 185 at 21. Defendants then argue that AmGuard is not liable as a matter of law because it had an arguable basis to deny Timm's claims and is entitled to rely on the reports from its independent adjuster, Beaver, and its independent engineer, Kyle in rejecting the estimates from Timm's public adjuster. Filing 185 at 21–26. The Court concludes that Timm's bad faith claim against WestGuard and AmGuard fails as a matter of law. Accordingly, the Court denies Timm's Motion for Summary Judgment and grants Defendants' Motion for Summary Judgment on Timm's bad faith claim.

### 3.  WestGuard

Just like their argument that WestGuard cannot be held liable for breach of contract, Defendants argue that WestGuard cannot be held liable for breaching the covenant of good faith and fair dealing because it is not a signatory to Timm's insurance policies. Timm's response echoes

31

the argument it made for its breach-of-contract claim against WestGuard, that is, that WestGuard can be held liable because AmGuard is its alter ego.

Under Nebraska law, good faith and fair dealing is a covenant implied in every contract that "requires that none of the *parties to the contract* do anything which will injure the right of another party to receive the benefit of the contract." *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 674 (Neb. 2011) (emphasis added). WestGuard, however, is not a party to Timm's insurance policies. Timm's only theory to hold WestGuard liable is by piercing the corporate veil. However, the Court concluded earlier in this Order that Timm has offered insufficient evidence from which a reasonable jury could find that AmGuard is WestGuard's alter ego. Therefore, as a matter of law, WestGuard cannot be held liable for breaching the covenant of good faith and fair dealing because it is not a signatory to Timm's insurance policies. *See Braesch v. Union Ins. Co.*, 464 N.W.2d 769, 776 (Neb. 1991) ("This [implied covenant of good faith and fair dealing] is dependent upon a contractual relationship between the plaintiff and the insurer.") (overruled on other grounds); *Christian*, 759 N.W.2d at 461–63 (declining to hold a shareholder liable for breach of an oral contract where only the corporation and the plaintiff were considered parties to the oral contract and the evidence was insufficient to pierce the corporate veil). Accordingly, WestGuard is entitled to summary judgment on Timm's claim for breach of the implied covenant of good faith and fair dealing.

### 4. AmGuard

In support of its claim for breach of the implied covenant of good faith and fair dealing against AmGuard,[7] Timm details every issue it has with the way in which AmGuard handled

---

[7] A complicating factor of this case, which neither party addresses, is that most if not all of Timm's accusations against AmGuard involve actions by Ardoline, the claims adjuster. Ardoline is an employee of WestGuard, not AmGuard. Nevertheless, the Court finds that Ardoline acted as AmGuard's agent for the purposes of handling Timm's claims.

Timm's claims. According to Timm, AmGuard failed to explain for which buildings and under what policy it issued payments, unreasonably delayed handling of Timm's claims, and arbitrarily rejected the estimates from Timm's public adjuster. AmGuard argues that it had an arguable basis to reject Timm's claims and that it was entitled to rely on its independent adjuster, Beaver, and its independent engineer, Kyle, in rejecting Timm's public adjuster's estimates.

Nebraska recognizes the "tort of bad faith refusal to 'settle' a claim with an insured policyholder" that springs from "the breach of the covenant of good faith and fair dealing." *LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 47 (Neb. 2005). "[A] first-party bad faith cause of action is based upon allegations that the insurer, in bad faith, refuses to settle with its own policyholder insured, who thereby suffers some type of direct loss." *Id.* (quoting *Braesch*, 464 N.W.2d at 776). "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the insurance policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Merrick v. Fischer, Rounds & Assocs., Inc.*, 939 N.W.2d 795, 807 (Neb. 2020). "The question '[w]hether a claim is fairly debatable is appropriately decided by the court as a matter of law . . . and such a determination is based on the information available to the insurance company at the time the demand is presented.'" *LeRette*, 705 N.W.2d at 50 (alterations in original) (quoting *Radecki v. Mut. of Omaha Ins. Co.*, 583 N.W.2d 320, 326 (Neb. 1998)). If the insurer has an arguable basis to deny the claim, a bad faith cause of action "fails as a matter of law regardless of the manner in which an investigation was or was not conducted." *Id.* at 49–50 (*Radecki v. Mut. of Omaha Ins. Co.*, 583 N.W.2d 320, 326 (Neb. 1998)).

---

*See Koricic v. Beverly Enterprises--Nebraska, Inc.*, 773 N.W.2d 145, 150 (Neb. 2009) ("An 'agent' is a person authorized by the principal to act on the principal's behalf and under the principal's control."). Therefore, AmGuard can be held liable for Ardoline's actions. *See Corman v. Musselman*, 439 N.W.2d 781, 787 (Neb. 1989) ("A principal is bound by, and liable for, the acts which an agent does within her or his actual or apparent authority.").

Timm first faults AmGuard for disregarding the estimates from Timm's public adjuster. However, AmGuard relied instead on the estimates prepared by its independent adjuster, Beaver, based on the engineering report of Kyle about the extent of the damage to the Grandview Apartments. AmGuard is permitted to "rely in good faith on its own experts' opinions rather than the opinions of the insured's expert." *Id.* at 50; *see also Tara Hills Villas v. Columbia Ins. Grp.*, No. A-07-935, 2008 WL 2839036, at *6 (Neb. Ct. App. July 22, 2008) (holding that the plaintiff's bad faith claim failed as a matter of law when the insurer relied on an independent adjuster and an engineering firm to estimate the insured's damages). Therefore, Timm's bad faith claim on the basis of AmGuard rejecting the public adjuster's estimates fails.[8]

Timm next argues that AmGuard acted in bad faith by issuing checks without specifying for which building and under which policy the checks were being paid. Timm has not pointed to any requirement under Nebraska law that AmGuard must provide these explanations, however. Instead, Timm must show that AmGuard lacked a reasonable basis to deny Timm's claims and that AmGuard acted with reckless disregard of that lack of a reasonable basis. *Merrick*, 939 N.W.2d at 807. Under Nebraska law, whether AmGuard "exercised the proper amount of care" in handling AmGuard's claims is irrelevant if there was a reasonable basis to deny the claim. *Esch v. State Farm Mut. Auto. Ins. Co.*, No. A-08-199, 2009 WL 52176, at *5 (Neb. Ct. App. Jan. 6, 2009). If AmGuard had such a basis, Timm's bad faith claim "fails as a matter of law regardless of the manner in which an investigation was or was not conducted." *LeRette*, 705 N.W.2d at 50.

In this case, Timm fails to show an absence of a reasonable basis by which AmGuard could have denied the claim, much less that AmGuard acted in reckless disregard of an absence of a reasonable basis. Instead, the evidence shows that AmGuard was aware that Timm reported its hail

---

[8] AmGuard being able to rely on its experts' estimates also rebuts Timm's assertion that AmGuard acted in bad faith by "woefully underpa[ying]" Timm's claims.

damage thirteen months after the damage allegedly occurred and that Kyle, the engineer, was unable to determine what damage was caused by the August 19, 2017, hailstorm. AmGuard's liability for the damage is "fairly debatable," and, therefore, as a matter of law, it had a reasonable basis on which to deny Timm's claim. *LeRette*, 705 N.W.2d at 50. Accordingly, Timm's bad faith claim on this basis fails as well.

Finally, Timm contends that AmGuard acted in bad faith by delaying payment on Timm's claims. Timm emphasizes that AmGuard did not issue payment until slightly over thirteen months had passed since Timm reported its claims. The Nebraska Supreme Court has "implicitly recognized that a claim of bad faith can encompass a delay in the settlement of benefits," *LeRette*, 705 N.W.2d at 49, with the proper inquiry being would "a reasonable insurer under the circumstances have . . . delayed payment of the claim under the facts and circumstances."[9] *Ruwe*, 469 N.W.2d at 134 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)). Despite framing the issue around what a reasonable insurer would have done, the Nebraska Supreme Court has also emphasized that "'[b]ad faith' by definition cannot be 'unintentional.'" *LeRette*, 705 N.W.2d at 49 (quoting *Anderson*, 271 N.W.2d at 376).

With this standard in mind, it is important to determine what actually caused the delay in processing Timm's claims. Timm reported its claims for hail damage to AmGuard on September 28, 2018. Filing 41-1 at 1. About two weeks later, AmGuard's independent adjuster, Beaver, inspected the Grandview Apartments and recommended retaining an engineer to help date the hail damage. Filing 165-3 at 1–2; filing 165-7 at 1–2. The engineer, Kyle, did not finish his reports on the Grandview Apartments until February 1, 2019. Filing 47-3 at 2.

---

[9] Although recognizing that bad faith can encompass delay, the Nebraska Supreme Court has never directly addressed the issue.

After Kyle finished his reports, Ardoline, AmGuard's claims adjuster, did not follow up with Beaver about the next steps in handling Timm's claims until May 7, 2019. Filing 177-9 at 1. At that time, Ardoline asked Beaver to provide an estimate for Timm's claims. Filing 177-9 at 1. After not hearing from Ardoline about the status of its claims, Timm's insurance broker, Mahoney, emailed Arodline on June 5, 2019, for a status update. Filing 177-13 at 12. After a series of emails, on July 19, 2019, Ardoline explained that AmGuard had set up the claim for the Avenue R property under the wrong policy and that the claim was being transferred to the correct policy. Filing 177-13 at 10. Later, on August 21, 2019, Ardoline told Timm that he wanted to resolve Timm's claims as soon as possible but noted that "the fact of the matter is there are multiple buildings, dates of loss (possibly outside the policy dates), and policies." Filing 177-13 at 7. On September 4, 2019, AmGuard issued its first payment for Timm's claims. Filing 177-11 at 5

The Court first notes that any delay in issuing payment that occurred before Kyle finished his reports on February 1, 2019, cannot be attributed to AmGuard because when Kyle finished his reports was not under its control. That leaves a seven-month delay between the time Kyle finished his reports and AmGuard began issuing payments. During that time, Ardoline discovered that the claim for the Avenue R property was under the wrong policy and had it transferred. Ardoline also noted some of the difficulties in resolving Timm's claims, including the number of buildings and dates of loss, some of which fell outside Timm's policy dates. The Court also acknowledges that communication between Ardoline and Timm was lacking and that there is some evidence that Ardoline could have handled Timm's claims more diligently.

On these facts, the Court concludes that Timm's bad faith claim based on the delay in payments fails as a matter of law. Timm has not offered evidence that AmGuard intentionally delayed processing Timm's claims. While Ardoline could perhaps have handled Timm's claims

more diligently, under Nebraska law mere negligence will not suffice. *See LeRette*, 705 N.W.2d at 49 (stating that bad faith cannot be unintentional). Moreover, the Nebraska supreme court has stated that a bad faith claim fails as a matter of law if an insurer had a reasonable basis to deny the claim, "regardless of the manner in which an investigation was or was not conducted." *LeRette*, 705 N.W.2d at 50. Based on the evidence before the Court, Ardoline was investigating Timm's claims during the seven-month delay and noted that there were difficulties in processing the claims based upon the number of buildings at issue and the multiple dates of loss. The Court has already concluded that AmGuard had a reasonable basis to deny Timm's claims. Therefore, Timm's bad faith claim does not survive AmGuard's Motion for Summary Judgment as a matter of law.

The Nebraska Court of Appeals case *Tara Hills Villas v. Columbia Insurance Group* is similar to the facts of this case. In *Tara Hills*, the plaintiff owned an apartment complex that suffered hail damage on April 10, 2001. *Tara Hills*, 2008 WL 2839036, at *1. The defendant insurance company did not hire an independent adjuster and an engineering firm to estimate the damages until 2002, and the court observed that "communication between [the insurer] and [the insured] was lacking." *Id.* at *6. Although acknowledging that "a bad faith claim could include a delay in the settlement of benefits," the court concluded the bad faith cause of action failed as a matter of law because the insurer had an arguable basis to deny the claim. *Id.* The court noted that there "was [a] considerable dispute regarding the amount of damages and whether the damages claimed could be attributed to hail as opposed to a noncovered condition." *Id.*

Like *Tara Hills*, this case involves a "considerable dispute" over whether Timm's policies covered the hail damage, a lack of communication between AmGuard and Timm, and a delay in handling Timm's claims. Indeed, the delay in *Tara Hills* is similar in length to the delay in this case. Because AmGuard had a reasonable basis to deny Timm's claims, like the plaintiff in *Tara*

37

*Hills* Timm's bad faith claim must fail. Accordingly, the Court grants AmGuard's Motion for Summary Judgment against Timm's bad faith claim.

### D.  Motions in Limine and Motion to Strike

Having ruled on the cross motions for summary judgment, the Court turns to Timm's Motions in Limine and its Motion to Strike. In its two Motions in Limine, Timm seeks to exclude or limit the expert testimony of Beaver, the independent adjuster, and Kyle, the engineer, and to strike a meteorologist report by Gregory J. Quinn. The Court addresses each motion in turn.

#### 1.  Quinn's Report and Testimony

Timm requests that the Court strike Quinn's meteorologist report and prevent him from testifying as an expert witness. Timm argues that Defendants failed to identify Quinn as an expert or disclose his opinions in accordance with the Court's deadlines in violation of Federal Rule of Civil Procedure 26(a)(2). Filing 167 at 4–8. Defendants concede that they will not use the report at trial or call Quinn as a witness. Filing 187 at 1. Because Defendants have represented that they will not use the report or call Quinn as a witness, the Court grants Timm's Motion to Strike.[10]

#### 2.  Kyle's Reports and Testimony

Timm seeks to exclude or limit the expert testimony of Kyle, the engineer who inspected the damage at the Grandview Apartments, for improper disclosures under Federal Rule of Civil Procedure 26(a)(2). Alternatively, Timm requests exclusion of Kyle's expert testimony as inadmissible under Federal Rule of Evidence 702 and the *Daubert* standard. Defendants respond that they provided sufficient disclosures to satisfy Rule 26(a)(2) and, even if they did not, Timm

---

[10] Defendants stated in their brief opposing Timm's Motion in Limine that they intend to use a Corelogic report introduced into evidence during the depositions of Timm's expert witness Kaszas and Timm's Rule 30(b)(6) witness John Lawson. Filing 187 at 1. In its reply brief, Timm argued that the Corelogic report should also be excluded. Filing 196 at 1–2. Because the Corelogic report was not the subject of Timm's Motion in Limine, the Court declines to rule on whether it should be excluded at this time.

suffered no prejudice. Defendants further argue that Kyle's expert testimony is admissible under the Federal Rules of Evidence. The Court concludes that Kyle's expert testimony is admissible and declines Timms's request to exclude it.

e. Federal Rule of Civil Procedure 26(a)

The Court begins with Timm's argument that Defendants failed to make expert disclosures for Kyle in violation of Federal Rule of Civil Procedure 26, and therefore the Court should exclude his expert testimony. Although the Court concludes Defendants have violated Rule 26, the Court will not exclude Kyle's testimony because Defendant's violation was harmless.

Upon the recommendation of Beaver, the independent adjuster, Ardoline, Defendant Amguard's adjuster, directed Beaver to retain Rimkus, an engineering firm. After being retained, Rimkus assigned Kyle, an engineer, to inspect the Grandview Apartments. During his investigation, Kyle authored three reports. In a January 2, 2019, report for the Avenue R property, Kyle stated that Timm reported that hail damage occurred "on or about" August 19, 2018. Filing 47-4 at 4. This date is incorrect because Timm actually reported that an August 19, 2017, hailstorm caused the damage to the Avenue R property. Apparently in reliance on that incorrect date, Kyle concluded that a May 10, 2018, hailstorm caused damage to the property. Filing 47-4 at 5.

After Beaver brought the incorrect date to his attention, Kyle authored a supplemental report for the Avenue R property dated January 11, 2019. Filing 165-21 at 1. The supplemental report corrected the date of the hailstorm to August 19, 2017, and concluded that hailstones from multiple previous hailstorms, including the August 19, 2017, hailstorm, caused damage to the property. Filing 165-21 at 2. According to Defendants, they did not discover that this supplemental report existed until the last week of March of 2022, so they did not disclose it to Timm until that time. Filing 183 at 19.

On February 1, 2019, Kyle issued a report for the 45th Street property. Filing 47-3 at 2, 4. Kyle stated that Timm reported that the hail damage occurred during an August 19, 2017, hailstorm. Filing 47-3 at 4. Like his supplemental report for Avenue R, Kyle concluded that multiple previous hailstorms, including the August 19, 2017, hailstorm, damaged the property. Filing 47-3 at 5.

Defendants identified Kyle as a retained expert in compliance with the Court's July 14, 2020, Final Progression Order. Filing 49-2 at 1. In the ordinary course of discovery, Defendants produced Kyle's original report for the Avenue R property and the report for the 45th Street property, although the reports were not identified as expert reports. Filing 22 at 3–4; Filing 23 at 1. The June 15, 2021, deadline for Defendants to provide complete expert disclosures to Timm passed without any disclosures. After the deadline passed, Defendants provided Timm with Kyle's resumé, prior case testimony information, and hourly rate via a November 12, 2021, email, Filing 184-2 at 2–10, and produced Kyle's supplemental report at the end of March of 2022.

Timm argues that Defendants violated Rule 26(a)(2)(B) and the Court's progression order by failing to timely disclose information related to Kyle's expert testimony, including his reports. The Court agrees.

"Federal Rule of Civil Procedure 26(a) requires litigants to make certain disclosures." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Under subsection (a)(2), a litigant "'must disclose to the other parties the identity of any witness it may use at trial to present' expert testimony." *Id.* (quoting Fed. R. Civ. P. 26(a)(2)). A district court has discretion to set the deadlines for disclosing expert witnesses and their reports. *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008) (recognizing that the district court may set deadlines for disclosing expert witnesses); *see also* Fed. R. Civ. P. 16(b)(3)(B)(i) (providing that a

scheduling order may "modify the timing of disclosures under Rule[] 26(a). Failing to disclose an expert witness "can justify exclusion of testimony at trial." *Crump v. Versa Prod., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005) (citing Fed. R. Civ. P. 37(c)(1)).

Under Federal Rule of Civil Procedure 26(a)(2)(B), a party must disclose any witness who is "retained or specially employed to provide expert testimony," and each disclosure "must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). An expert's written report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). "Rule 26 also establishes the timing and sequence of such disclosures absent a court order setting these deadlines." *Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019). Under Rule 16, a district court may "modify the timing of disclosures under Rule 26(a)." *Id.* (quoting Fed. R. Civ. P. 16(b)(3)(B)(i)). "A 'district court has broad discretion in establishing and enforcing the deadlines.'" *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)). Failing to provide disclosures in compliance with a court scheduling order constitutes a violation of Rule 26. *See Vanderberg*, 906 F.3d at 704 ("[F]ailure to disclose in a timely manner is equivalent to failure to disclose." (alteration in original) (quoting *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998))); *Wegener*, 527 F.3d at 691–92 (holding that a party violated Rule 26 when it failed to disclose expert testimony by the deadline imposed by the district court's progression order).

41

Defendants failed to provide timely disclosures in accordance with the Court-imposed deadline. Defendants did not disclose Kyle's supplemental report, resumé, prior case testimony, and hourly rate until after the disclosure-deadline passed. By failing to provide timely disclosures, Defendants have violated Rule 26. *See Vanderberg*, 906 F.3d at 704.

Timm further argues that Kyle's reports do not qualify as expert reports under Rule 26 because they do not provide a complete statement of all of Kyle's opinions regarding the damage to the Grandview Apartments. The Court agrees with Timm that Kyle's reports do not provide "a complete statement of all opinions [Kyle] will express" at trial as required by Rule 26(a)(2)(B)(i). In both Kyle's 45th Street report and his original report for Avenue R, Kyle concluded that hail caused the fractures to the vinyl siding of several buildings at both properties. Filing 47-3 at 35; Filing 47-4 at 21. However, during his deposition, Kyle testified that it was his opinion that hail did not cause damage to the vinyl siding of many of these same buildings. Filing 171-3 at 21–22, 25. This testimony seemingly contradicts his reports, meaning that his report does not contain "a complete statement of all opinions" to which Kyle will testify at trial. Accordingly, Defendants have failed to provide a complete written report under Rule 26.[11]

Defendants' failure to abide by Rule 26 brings them within the ambit of Federal Rule of Civil Procedure 37. *See Vanderberg*, 906 F.3d at 702 (noting that Rule 37 "give[s] teeth" to Rule 26). When a party fails to provide a sufficient disclosure under Rule 26(a), "[T]he party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

---

[11] Timm also argues that Kyle's report is insufficient under Rule 26 because it does not contain his opinions regarding Quinn's meteorologist report, about which Defendants elicited testimony during Kyle's deposition. Because the Court previously ruled that this report will not be referenced at trial, such an error is harmless. *See* Fed. R. Civ. P. 37(c)(1) (stating that the failure to abide by Rule 26(a) will not lead to exclusion if the failure was harmless). Timm also argues that Kyle's report is insufficient because it does not contain Kyle's opinion that he disagrees with the amount of hail damage observed by Kaszas, Timm's expert. The Court concludes that such an omission does not violate Rule 26 because Kyle stating that he disagrees with Kaszas on the amount of hail damage at the property was simply another way of him saying that he believes the amount of hail damage outlined in his reports is correct. Thus, Kyle's statement that he disagrees with Kaszas is not a new opinion that required a supplemental disclosure under Rule 26.

trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining how to remedy a party's insufficient disclosure of an expert, a court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) (quoting *Wegener*, 527 F.3d at 692). Ultimately, "[a] district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide information or identify a witness in compliance with Rule 26(a)," although the Eighth Circuit Court of Appeals has cautioned that "exclusion of evidence 'is a harsh penalty and should be used sparingly.'" *Id.* at 644–45 (quoting *Wegener*, 527 F.3d at 692).

Timm argues that it has been prejudiced by Defendants' noncompliance because it was forced to conduct a "time consuming and costly deposition" of Kyle and because timely disclosures, especially of Kyle's supplemental report for Avenue R, would have led to "more fruitful settlement discussions." Filing 170 at 17–18. Defendants respond that its violation of Rule 26(a) was harmless because the supplemental report for Avenue R did not include any significant alterations to Kyle's conclusions; timely disclosures would not have had any effect on the conclusions reached by Timm's expert, Kaszas; and any potential harm to Timm has been cured by taking Kyle's deposition. Filing 183 at 24–26.

The Court first notes that Timm's complaints that it was forced to conduct a deposition of Kyle and that its settlement discussions were unfruitful is irrelevant to the harmlessness inquiry under Rule 37(c)(1). When a party seeks exclusion of expert testimony due to violations of Rule 26(a), a court's primary focus is how the violation affects the ability of the party to prepare its case

for trial. *See Wegener*, 527 F.3d at 693 (observing that the untimely disclosures harmed the ability of the other party to prepare for trial); *Trost*, 162 F.3d at 1008–09 (noting that a party was "significantly prejudiced" by untimely disclosures because of the "lack of time to prepare to refute the evidence at trial."). Indeed, Rule 37(c)(1) separately provides for additional sanctions caused by unnecessary expenses incurred by a party's violation of Rule 26(a). *See* Fed. R. Civ. P. 37(c)(1) (providing that, "on motion and after giving an opportunity to be heard," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to disclose expert witnesses]").

Moreover, although the Defendants' lackadaisical attitude towards disclosing experts is frustrating, the Court agrees with Defendants that their untimely disclosures were harmless. Nothing indicates that the opinions of Timm's expert, Kaszas, would have changed had Defendants provided Kyle's supplemental report and his opinions about damage to the vinyl siding sooner. Kaszas's own report states that he considered Kyle's two original reports, independently concluded that the August 19, 2017, hailstorm caused damage to the Grandview Apartments, and stated he disagreed with Kyle's conclusions. Filing 184-8 at 4, 35. Additionally, Timm has deposed Kyle and is now informed of his complete opinions regarding the damage to the Grandview Apartments. Defendants' failure to make timely disclosures of Kyle's expert testimony has not prevented Timm from effectively litigating its case. Therefore, the Court declines to impose the harsh remedy of excluding Kyle's expert testimony.

### f.   Federal Rule of Evidence 702

Alternatively, Timm argues that Kyle's testimony should be deemed inadmissible under Federal Rule of Evidence 702. Timm contends that Kyle's testimony is unreliable because his original Avenue R report relied on an incorrect reported date of loss—August 19, 2018, rather than

August 19, 2017—and because his supplemental report for Avenue R—which changed his opinion on what hailstorms caused the damage to the Grandview Apartments—shows that he reaches his causation opinions arbitrarily. Filing 170 at 21, 24–25. Defendants counter that Timm's arguments are irrelevant and do not address Kyle's training, technical knowledge, or expertise, which are the relevant consideration. The Court concludes that Kyle's testimony is admissible.

"Federal Rule of Evidence 702 governs the admissibility of expert testimony." *McMahon v. Robert Bosch Tool Corp.*, 5 F.4th 900, 903 (8th Cir. 2021) (citing *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005)). An expert's opinion is admissible if:

> [1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; [2] the testimony is based on sufficient facts or data; [3] the testimony is the product of reliable principles and methods; and [4] the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (bracketed numbers added). "In the case of all expert testimony the district court serves as a gatekeeper to ensure that only reliable and relevant expert testimony is presented to a jury." *United States v. Legs*, 28 F.4th 931, 935 (8th Cir. 2022) (quoting *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016)). A district court must ensure expert opinion is based "on good grounds" and not "subjective speculation that masquerades as scientific knowledge." *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 935 (8th Cir. 2020) (quoting *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). Nevertheless, "Rule 702 is a rule 'of admissibility rather than exclusion.'" *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 551 (8th Cir. 2022) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997)). Thus, in general, expert testimony is admissible unless "it is 'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*,

9 F.4th 768, 778 (8th Cir. 2021) (citing *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) and *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

Timm first argues that Kyle's expert testimony is inadmissible because his original Avenue R report relied on an incorrect reported date of loss, which caused him to conclude that a May 10, 2018, hailstorm damaged the property. The Court disagrees. First, besides the date of loss conclusion, the original Avenue R report also outlined Kyle's opinion about the scope of the hail damage, which was unaffected by the incorrect reported date of loss. Second, Kyle authored a supplemental Avenue R report to correct the mistakes in his original report. Therefore, the fact that Kyle initially included an incorrect reported date of loss in his report has no effect on the admissibility of his expert testimony.

Timm further argues that Kyle's expert testimony is unreliable because he "arbitrarily" changed his causation opinion in the supplemental report. However, Kyle changed his causation opinion to reflect the corrected reported date of loss, not simply on a whim. Moreover, to the extent there are factual inconsistencies between Kyle's original report and his supplemental report, such issues go to the weight, not the admissibility, of his expert opinions, which Timm may attack through cross-examination and contrary evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Kyle holds a B.S. degree in Architectural Engineering and an M.S. degree in Civil Engineering and has more than 14 years of experience as a licensed professional engineer. *See In re Bair*, 9 F.4th at 777 ("[T]he expert must be qualified to assist the finder of fact."). His reports thoroughly outline his observations and explain his conclusions. The Court concludes that Kyle is

46

qualified to testify as an expert and that his opinions satisfy the standards under Rule 702. Therefore, the Court rejects Timm's argument that Kyle's testimony is inadmissible and denies its Motion in Limine to exclude or limit Kyle's testimony.

### 3. Beaver's Reports and Testimony

Finally, the Court addresses Timm's Motion in Limine to exclude or limit the testimony of Beaver, the independent adjuster. Like its Motion in Limine seeking exclusion of Kyle's testimony, Timm argues that Beaver's expert testimony should be excluded because Defendants failed to comply with Federal Rule of Civil Procedure 26 or, alternatively, that his expert testimony is inadmissible under Federal Rule of Evidence 702. Defendants respond that they have complied with Federal Rule of Civil Procedure 26—and if they have not that their failure was harmless— and assert that Beaver's expert testimony satisfies Federal Rule of Evidence 702's standard for admissibility. The Court concludes that Defendants' failure to comply with Rule 26 was harmless and that Beaver's expert testimony is admissible under Rule 702.

### g. Federal Rule of Civil Procedure 26(a)

The Court first addresses whether Defendants violated Federal Rule of Civil Procedure 26(a) and if Beaver's testimony should therefore be excluded under Federal Rule of Civil Procedure 37. Beaver, the independent adjuster hired by Defendants to assist in handling Timm's claims, authored 10 status reports during his investigation and provided estimates for the damage to the Avenue R and 45th Street properties. *See, e.g.*, Filing 165-3 at 1–32; Filing 165-7 at 1–37. In general, these reports outline Beaver's observations, estimate the loss to the Grandview Apartments, and recommend how Timm's claims should be handled moving forward. These reports were sent to Timm during the ordinary course of discovery.

Defendants identified Beaver as a retained expert in compliance with the Court's July 14, 2020, Final Progression Order. Filing 49-2 at 1. Unfortunately, Defendants did not make complete expert disclosures by June 15, 2021, as mandated by the Court's Amended Progression Order. After this deadline passed, Defendants provided Beaver's resumé, prior testimony information, and hourly rate. Filing 184-2 at 2–10.

Kaszas, Timm's expert, authored reports stating that he had reviewed some of the status update reports written by Beaver and that he disagreed with some of the conclusions related to the amount of damage at the Grandview Apartments. Filing 184-7 at 4, 38; Filing 184-8 at 4, 35. Kaszas concluded that an August 19, 2017, hailstorm caused the damage to the properties. Filing 184-7 at 38; Filing 184-8 at 35. Beaver testified at his deposition that he disputed that August 19, 2017, was the correct date of loss. Filing 165-2 at 8–9. He also stated that he does not consider himself to be an expert. Filing 165-2 at 5.

Timm argues that Defendants failed to timely disclose Beaver's expert testimony by the Court's deadlines. The Court agrees. Defendants failed to provide Beaver's resumé, prior testimony information, and hourly rate until after the deadline for making complete disclosure had passed. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv)–(vi). Moreover, Beaver's opinion about the date of loss to the Grandview Apartments is nowhere to be found in any of his reports. Instead, his reports simply relay Kyle's conclusion about the correct date of loss. By failing to disclose this new opinion, Defendants have violated Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (mandating that an expert report provide "a complete statement of all opinions the witness will express"); *see also* Fed. R. Civ. P. 26(a)(2)(E) (requiring parties to supplement expert disclosures); *Wells v. Lamplight Farms, Inc.*, 303 F.R.D. 530, 537 (N.D. Iowa 2014) (concluding that the plaintiffs violated Rule 26 when they sought to elicit new expert opinions after the disclosure deadlines had passed).

Having concluded that Defendants violated Rule 26, the Court turns to whether Beaver's expert testimony should be excluded under Rule 37. Timm posits the same arguments that it has been harmed by Defendants' noncompliance as it made when seeking exclusion of Kyle's expert testimony—that Defendants' conduct forced them to depose Beaver and led to unfruitful settlement discussion. As explained above, these complaints are irrelevant to the harmlessness inquiry presently before the Court. Moreover, the Court agrees with Defendants that its violation of Rule 26 was harmless. Like with Kyle, Kaszas considered Beaver's reports and responded to them. Nothing indicates that timely disclosure of Beaver's expert testimony would have changed Kaszas's opinions. Moreover, Timm deposed Beaver and is now informed of his complete opinions regarding the correct date of loss. Defendants' failure to make timely disclosures had not prevented Timm from effectively litigating its case. Therefore, the Court will not exclude Beaver's testimony.

### h.   Federal Rule of Evidence 702

Timm also contends that Beaver's testimony is inadmissible under Federal Rule of Evidence 702. Timm's sole argument on this point is that because Beaver testified in his deposition that he is not an expert, and WestGuard's corporate representative testified that WestGuard does not consider independent adjusters like Beaver to be experts, then he is not an expert for the purposes of Rule 702. Filing 164 at 18–21. The Court finds Timm's argument unpersuasive. Whether an individual qualifies as an expert under the Federal Rules of Evidence is a legal determination for the Court to make. *See Legs*, 28 F.4th at 935 (noting that a district court acts as a "gatekeeper" in determining the admissibility of expert testimony). The relevant inquiry is whether the witness's "'knowledge, skill, experience, training, or education' qualify him as an expert." *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 828 (8th Cir. 2019) (quoting Fed.

R. Evid. 702). Moreover, the term "expert" in the evidentiary context has a specific legal definition. Therefore, it is highly questionable that the vague statements by Beaver and WestGuard's corporate representative have any connection to whether Beaver or the corporate representative believe Beaver's "knowledge, skill, experience, training, or education" qualify him to provide an expert opinion in this case.

Turning to the applicable legal standard for determining whether a witness qualifies as an expert, the Court concludes that Beaver qualifies as an expert for the purposes of his anticipated testimony. Beaver has been employed as an adjuster with Engle Martin since 2015. Filing 184-2 at 3. He has inspected "thousands" of buildings for storm damage since being employed in the insurance industry in 2005. Filing 181 at 2. He has also been utilizing Xactimate, a damage estimate tool he used to calculate the loss to the Grandview Apartments, since 2005. Filing 181 at 2. He has taken several classes and has undergone training for his duties as an independent adjuster. Filing 181 at 1–2. The Court concludes that Beaver's knowledge, training, and experience qualify him to testify as an expert in this case as to the cost to repair the damage to the Grandview Apartments and the correct date of loss. *See Indus. Risk Insurers v. D.C. Taylor Co.*, No. 06-CV-171-LRR, 2008 WL 11509789, at *3 (N.D. Iowa June 5, 2008) (finding that an independent adjuster was qualified to be an expert on damages). Accordingly, the Court denies Timm's Motion in Limine to exclude or limit Beaver's testimony.

## IV.   CONCLUSION

The Court grants in part and denies in part Defendant's Motion for Summary Judgment. WestGuard is dismissed as a party to this case. AmGuard has waived Timm's failure to provide prompt notice as a defense to this action and, therefore, Timm's breach-of-contract claim against AmGuard remains pending. The Court grants Defendants summary judgment on Timm's bad faith

claim. Moreover, the Court denies both of Timm's Motions in Limine and grants its Motion to Strike. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment, Filing 172, is granted in part and denied in part;

2. Timm's Motion for Summary Judgment, Filing 174, is denied;

3. Timm's Motion in Limine to limit or exclude the testimony of Broc Beaver, Filing 163, is denied;

4. Timm's Motion to Strike, Filing 166, is granted;

5. Timm's Motion in Limine to limit or exclude the testimony Brandon Kyle, Filing 169, is denied;

6. Defendant WestGuard is terminated as a party to this action; and

7. Timm's remaining claim is for breach of contract against AmGuard.

Dated this 2nd day of September, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge